ALLEGRE'S *Adm'rs vs.* THE MARYLAND INSURANCE Co.
*December,* 1836.

In an action of covenant upon a policy of insurance, in which the words " with liberty," of a port were used; it was *held,* that those words, confer a power subordinate to the general course of the voyage.

They do not necessarily import an intention to trade at the port mentioned; nor do they amount to an assurance, or intimation to the underwriter, that the assured looked to the port of privilege under any circumstances in the contemplation of the parties, as that, at which the voyage was designed to terminate.

Mere awakening circumstances, inciting the underwriter to inquiry, are not sufficient to relieve the assured from the necessity of making known to the former the fact, that the cargo for insurance consisted of live stock. A knowledge of this fact, previous to the insurance, must be shewn in the underwriter, or an imputed knowledge, by proving, that on the voyage insured, live stock is the only article of commerce; and such imputed knowledge does not result from the introduction into the policy of the words, " with liberty," of the port, to which such exclusive trade is shewn.

When insurance is demanded on live stock, it is the duty of the assured to notify the assurers of the nature of the cargo, and his failure to do so, vitiates the policy.

APPEAL from *Baltimore* county court.

This was an action of covenant on a policy of insurance. It is the same case reported in 6 *Har. and John.* 408, and 2 *Gill and John.* 136, to which reports the reporters now refer for a more detailed account of the evidence in the cause.

The policy on which the claim was founded, was at, and from *Rio de la Plata* to *Havana,* with liberty of *Martinico ;* on the cargo of the brig *Eugene, Charles A. Chatumeau,* master, valued at $6,000.

The cargo with which the brig sailed, consisted exclusively of mules and jackasses; and on her voyage, and before she reached *Martinico* she encountered a violent storm, which killed the principal part of the live stock, shattered the vessel and forced her to repair to *Rio de Janeiro,* where she was condemned as unworthy of repairs, and with a small number of mules remaining alive, sold for account of whom it might concern. The cargo was regularly abandoned. There was evidence to show, that the principal trade from *Rio de la*

*Plata* to *Havana*, was in *beef;* mules and jackasses were sent to the *French West India islands.* A trade exclusively in mules and jackasses from *Rio de la Plata* to *Martinico,* and proof of mules, &c. being occasionally shipped from *Rio* to *Havana,* with jerked beef. There was also proof of a usage among underwriters in *Baltimore,* to consider that words liberty of a place in a policy of insurance gave liberty to trade; so did liberty to touch, or liberty to touch and stay. There was evidence also of a prevailing practice to use *Martinico* for the purpose of procuring a clearance from that port for *Havana.*

After this evidence the plaintiffs prayed the following instruction to the jury : if the jury find from the evidence in the cause, that at the time of making the policy of insurance in this cause, and before, the trade from the *river La Plata* to *Martinico,* was exclusively in mules and other live stock exported from the river *La Plata,* and that mules were an article of trade and export from *Rio de la Plata* to *Havana,* during the same period; and if they also find, that by the general usage of trade of the city of *Baltimore,* at the time of making the said policy, and before, the " *liberty of Martinico,*" mentioned in the policy, and in the order of insurance in this cause, was understood and construed to give the assured the right of carrying a cargo from *Rio de la Plata* to *Martinico,* and there selling the whole cargo, and of terminating the voyage there, if the assured thought proper to do so, then if the jury shall believe the rest of the evidence offered by the plaintiffs in the cause, the plaintiffs are entitled to recover, notwithstanding the omission to specify live stock, or mules and jackasses, as the cargo meant to be insured. Which instruction the court refused to give.

The plaintiff then moved the court to instruct the jury as follows : if the jury find from the evidence in the cause, that according to the course of trade, at and long before the making the policy of insurance in this cause, mules and other live stock were the sole articles of export from *Rio de la Plata* to *Martinico ;* and that at the time and long before

the making of said policy, mules were an *ordinary article* of export from *Rio de la Plata* to *Havana ;* and if the jury further find that by the usage and practice among merchants and underwriters in the city of *Baltimore*, at and long before the time of making the said policy, the *" liberty of Martinico,"* mentioned in the order for insurance in this cause, and in the policy aforesaid, conferred upon the assured, the option of going to *Martinico* from *Rio de la Plata,* and selling there the whole cargo laden at *Rio de la Plata*, and of making *Martinico* the termination of his voyage, or of selling a part of his cargo at *Martinico* and carrying the remainder to *Havana*, or of unlading his whole cargo at *Martinico* and taking in and carrying a new cargo thence to *Havana ;* and further, if the jury do not find that *Martinico* was ever used as a port to get a clearance to enable a vessel sailing from *Rio de la Plata* to *Havana*, to obtain an entry into *Havana*, then the fact that the direct trade from *Rio de la Plata* to *Havana*, consisted in other articles besides mules, does not preclude the recovery of the plaintiff in this cause. Which instruction the court refused to give, but instructed the jury upon all the evidence in the cause, that the plaintiff could not recover, *because he had not shewn either an exclusive direct trade in live stock from Rio de la Plata to Havana, nor an exclusive indirect trade from Rio de la Plata by Martinico, to Havana.*

The plaintiff excepted ; and the verdict and judgment being against him, he brought the cause to this court upon appeal, where it was argued before Buchanan, Ch. J. and Stephen, Dorsey and Chambers, Judges.

Mayer, for the appellant.

The decision in this cause formerly made depended on the case of 4 *Pick.* 429, but in the record before brought up, there was no evidence of an exclusive trade in mules ; here an exclusive trade in them to *Martinico* is proved ; and a trade in jerked beef and mules from *Rio de la Plata* to *Havana.* The proof also shows, that in 1820, the trade in mules

to *Havana* was more active than since; and that vessels carrying mules generally carry nothing else. There is also in this record, proof of usage, that liberty of a port is a right to trade there, and make it a *terminus* of the voyage. Then the voyage described from its nature indicated the articles to be carried. *Martinico* was one of the points of the voyage, and the underwriter considered the premium to be charged on such enterprises. It was an insurance on cargo, asking a liberty of a port in connection with such cargo. Why use if not to trade? But the proof of usage is clear and positive. *Martinico* then was one—or might be one of the proposed termini of the voyage, and the underwriter was bound to know that mules might be carried. The alternative of carrying live stock to *Havana*, was presented to the underwriter and put him on inquiry. Then under the proof of usage the policy is the same as if it had been to *Martinico* and *Havana*. In effect to either or both ports. In point of law, then they were notified the live stock would be carried, for there was no other article of trade common to both ports from the *Rio de la Plata*. *Marsden vs. Reid*, 3 *East*. 572, a voyage to several ports is a voyage to one or all of them; but if she proceeds to more than one port she must visit them in the order named, *Kane vs. Columbian Insurance Company*, 2 *John*. 264. *Houston vs. New England Insurance Company*, 5 *Pick*. 89. *Hale vs. Mercantile Marine Insurance Company*, 6 *Pick*. 172. The underwriter must take notice of the course of trade—facts in connection with it are presumed to be in his knowledge. If he desires more information he must seek it. He is not merely to be passive and act exclusively on the facts presented by the order to his consideration. *Allegre's adm'rs vs. Maryland Insurance Company*, 2 *Gill and John*. 160. 1 *Pet. S. C. Rep*. 159. *Maryland and Phœnix Insurance Companies vs. Bathurst*, 5 *Gill and John*. 227, 228. In this voyage the underwriter took the risk of the fact that the *second* port, *Martinico*, might be used to trade at, 2 *Phil. Ins*. 80, 85 to 88.

Again the court below erred in not submitting to the jury

the question of the increase of risk between a live and dead cargo. The materiality of that increase was for the jury. On the materiality of concealment it is competent for the assured to show that an adequate premium was paid. Every case where a policy is sought to be avoided on the ground of increased risk, depends on its own peculiar circumstances. Judicial knowledge does not extend to this, and we have lost the right of argument before the jury from the mode in which they were instructed.

D. Stewart, for the appellee.

The case of *Allegre's admr's vs. Maryland Insurance Company,* in 2 *Gill and John.* 162, declares that a policy on cargo will not cover live stock, and requires a disclosure to the underwriter to extend its operation. The question now is, whether the course of trade will affect the underwriter with notice, and leave him liable to its consequences. The general meaning of the term cargo, excludes the company from liability for live stock. The company relies on the general rule. The plaintiff must show himself within the exception, the burthen of proof is on him. He must establish the course of trade—*Rio de la Plata* is the beginning and *Havana* the end of the voyage insured. Is there evidence in the cause which can bring to the underwriter, at the time of the inception of the contract, such a notice as is equivalent to notice to him of the actual voyage in contemplation at that time ? The appellee finds this in the right to go to the port of privilege, *Martinico.* He had a right to go there, but that right must be consistent with the objects of the main adventure. Such is the American law. The liberty is sub-ordinate to the main adventure. 1 *Mar. Ins.* 191, 192. The order of the voyage which the parties contemplated, on which the vessel set out, was for *Havana.* It was to that port in fact and in contemplation of law ; and there is no proof of exclusive trade in live stock between *Rio* and *Havana ;* and con-sequently, the exception relied on is not established as to what constitutes an exclusive trade, in *Parker, et al vs. Jones,*

13 *Mass.* 177. The cases in 2 *John.* 254, and 5 *Pick.* 89, decide that the particular order of ports as stated in the policy need not be followed. They are cases on the point of deviation, and decide that a port of privilege may be avoided, not that it enlarges the ordinary effect of the policy; nor that it is a *terminus* of the voyage—again, the exception on which we rely calls for an exclusive trade, as distinguished from a casual or accidental trading.

MERIDETH, further for the appellee.

The counsel for the appellant misapprehends the opinion of the court on the *second* appeal. The court will find in that some little variety in the evidence, but it does not affect the principle decided by this court. It stands as it did on the last appeal. To show this it may be necessary to compare the cause, as it was and now is. The nature of the insurance, the voyage and all the matters already stated need not be repeated, nor the several minor points disposed of on the last appeal; one important point was on the effect of the order, standing on the word cargo. The county court before decided the cause in the absence of all proof of usage, whether "cargo," excluded or included live stock. They placed themselves on the materiality of the increase of the risk, and a concealment fatal to the risk. *Allegre's adm'rs vs. Maryland Ins. Co.* 2 *Gill and John.* 144, and put the case to the jury on those questions. The argument now used, that the underwriter was bound to look to the course of trade was used then; and the court said, they must look to the whole voyage. The underwriter was bound to know the course of trade—and that a cargo of live stock might be carried.

But when we look to the points decided by the court, we see that the word "cargo," did not cover live stock. The nature and character of live stock as cargo was considered, and the right of the underwriter to know that a cargo of live stock was intended to be transported, sustained. The exceptions are founded on a known usage, that cargo shall com-

prehend live stock when the contract was made, or upon an exclusive trade in live stock on the voyage insured. These bind the underwriter. Then why did the cause go back before? Because evidence of a usage of trade that cargo covered live stock was offered and rejected by the court.

The construction of the order followed the general principles of insurance, and put on the reason and authority of the case from 13 *Mass.* on the former trial, the proof showed an exclusive trade in live stock from *Rio* to *Martinico,* and an occasional trade in those articles to *Havana.* But the underwriter is only bound to look to the course of trade on the voyage from *La Plata* to *Havana,*—to regard the termini and not the intermediate port,—the course of trade on the voyage described in the order.

Does the additional evidence now in the cause enlarge the liberty at *Martinico?* It declares that liberty to touch means to trade. The American cases show that it is a liberty to trade, provided it produces *no* delay, in which event it discharges the underwriter. 1 *Phil. Ins.* 203. I contend now that the court before had the same evidence of usage as now, the point, that liberty to touch was to trade, was fully argued. It is re-argued that the underwriter must know the result of this liberty. This was conceded in the cause before. The underwriter is bound to look to the order, policy and course of trade in connection with it. This order is not in the alternative. It was not to *Martinico* or *Havana*—perhaps *Havana,* but describes a voyage to *Havana.* The trade which the underwriter was bound to know, was from *Rio de la Plata* to *Havana,* or to *Havana via Martinico ;* not from *Rio* to *Martinico,* as the ultimate *terminus* of the voyage. The opinion of the court below, was in conformity to the decision of this cause, as before reported. We admit that an underwriter is presumed to know the course of trade which he insures. The voyage gave a liberty to touch, what inference is he bound to make from this liberty? He is bound to believe that the assured would make a whole voyage, not a part and subordinate part. The vessel had in fact given up the liberty.

All his papers show a direct voyage to *Havana ;* she designed to abandon the liberty, and although it was the real voyage then being prosecuted, the assured turn round and plant themselves on the order, giving it a construction to bring it within the exception opposed to their real designs.

We contend also, that as no return premium was asked for, that the assured always contemplated going to *Havana,* and never considered *Martinico* as one of the *termini* of the voyage. *Hughes on Ins.* 137. 1 *Phil. Ins.* 174.

The circumstances and course of the voyage described in this order, were not calculated to awaken inquiry on the part of the underwriter, and so prevent his charging the assured with concealing the fact that live stock was to be carried. The order could not induce the underwriter to suppose that an alternative voyage to one of two ports was intended; but on the contrary, the underwriter supposed the voyage was not to terminate at *Martinico,* which fact answers all the cases founded upon contingent *termini,* as where various distinct ports of destination were mentioned. 3 *East.* 573. 5 *Pick.* 89. 2 *John.* 283. It is true a voyage may terminate at an intermediate port; if the assured pleases the risk may end there. 28 *Serg. and Low,* 22. The risk ends where the voyage is given up. 1 *Phil. Ins.* 174. But the volition of the assured in terminating his voyage, cannot create a presumption against the underwriter; he cannot anticipate it, nor be presumed to look to it; his calculation is, that the whole voyage will be performed ; he presumes it from the payment of the first premium ; and if intermediate ports of *termini* are not intended to be used as set forth the policy does not attach. 1 *Mar.* 324. Moreover, this policy in terms only attached upon the cargo shipped at *Rio de la Plata,* and not the cargo laden at a succession of ports. *Hughes,* 127, 128. 1 *Taunt.* 463. 1 *Phil. Ins.* 70. 2 *Phil. Ins.* 60. The usage relied on does not change this view of the case. The usage shows that *liberty* means a right to *trade,* and so is the proof. But then this is restricted by the terms of the policy. Usage does not counteract the express provisions of a contract. Its explicit

terms prevail. 1 *Phil.* 14, 17. This court has said that the underwriter must look to the *termini* of the voyage and de-cided affirmatively, that an exclusive trade in live stock from *Rio* to *Martinico* will not do. It must be an exclusive trade to both ports. That the underwriter was bound to look to the course of trade on the voyage insured—and the decision of the court below was in strict conformity.

Upon the second point of the appellant, as to error from the materiality of the increase of risk not being submitted to the jury. The court decided that the term *cargo* did not generally cover live stock, as they increased the risk, and underwriter not bound unless previously informed of the risk; there was nothing for the jury. Increase of risk was no longer an open question.

Upon the whole there was no circumstance which called the attention of the underwriter to the course of trade between *Rio* and *Martinico.* The voyage was not to terminate, nor the cargo to be changed there. All circumstances induced the belief that it was a direct voyage to *Havana.* At *Rio* the assured determined to go there. What then was the object of the liberty? It was incumbent on the assured to announce that. It was not to trade, nor to terminate the voyage, nor to exchange the cargo. His object was to procure a clearance from a neutral port. The meaning of the term cargo being ascertained, the conclusion is, that the object of the assured in using it was not consistent with fairness, to divert attention from the cargo intended to be shipped. Where the policy discloses the voyage, yet if the circumstances connected with the application are calculated to mislead the underwriter, the policy is void. 1 *Mar.* 322. A policy literally true, if cal-culated to induce a false conclusion is void.

GLENN for the appellant in reply.

The case is free from fraud. The property shipped is fully equal to the valuation. The questions to be now decided are essentially different from those formerly presented for deter-mination in this cause. The usage and proof of trade is new.

The proof of exclusive trade in mules to *Martinico* is a new fact. The only point decided before was that the word cargo did not include live stock except under particular circumstances; we now establish by proof that liberty of *Martinico* was a liberty of trading and terminating the voyage there, of selling all the cargo there, or of selling none of it there. The effect of a course of trade is the same as an express declaration on that subject. This, with the order, announces the intent to unlade at *Martinico.* It is also notice that the trade is carried on but in one commodity. Both, and each of the parties, are bound to know this. It is equivalent to an express insurance on cargo from *Rio* to *Martinico.* When I ask for liberty to touch, stay, and trade at a port, and but one article is carried to that port, why is it, that the underwriters, bound to know the course of trade, do not know the nature of the cargo composing such enterprises? This is like other risks not ordinarily covered. If a party announces his intent to visit a belligerent port, then the belligerent character of the cargo need not be described. The case of the *Maryland and Phenix Ins. Co. vs. Bathurst.* 5 *Gill and John.* 159, 160. The underwriter may inquire and demand a warranty, and should not let the voyage go on, and after a loss set up his own default as an excuse for not paying. This is a case of construction in which we are to look at the policy and order, interpreted by the usage proved in the cause, and as if it had been incorporated in the order and policy. The prayer presents a question of construction, and nothing else. The order is for whom it may concern; it may cover belligerent risks. It is from the *river Plata* which covers any port on that river. It is with a liberty, what does that include? It is a general liberty—nothing restrains it. It is not a special liberty as to do a particular thing, or use the port for a particular purpose: but an unrestricted universal privilege to use *Martinico,* for all, and any purpose, as any other port. The usage fixes the meaning of the liberty. If this is not so the liberty is paid for without an equivalent, for the only article in which a trade to the port of the liberty is carried on with, is that

carried on this occasion; the liberty is to try both markets, and to do this, the assured has a right to carry cargoes suitable to both. Live stock was the only article common to both. We proposed to submit to the court on the proof, that the object of stopping at *Martinico* was to trade, and the counsel now opposed to us are not at liberty to argue here upon that view of the case. If the liberty as expounded by the usage makes an insurance at and from *Rio* to *Martinico* and thence to *Havana*, which brings us within the exception, as proof shows an exclusive trade to one of the ports, if it was a case of alternative destination in terms, its effects conceded. We contend that the liberty set up and established here produces that result.

DORSEY, Judge, delivered the opinion of the court.

The only question discussed in this cause arose as to the effect of the words in the policy, "*with liberty of Martinico.*" with liberty of a port, is a power subordinate to the general course of the voyage.

It does not necessarily import an intention to trade. It may, and ordinarily is granted for other and different purposes. It is not an assurance or intimation to the underwriters, that the assured looked to the port of privilege, under any circumstances, in the contemplation of the parties, as that, at which, the voyage was designed to terminate. Mere awakening circumstances, inciting the assurer to inquiry, are not sufficient to relieve the assured from the necessity of making known to the insurer, the fact that the cargo for insurance consisted of live stock; as was in effect decided in the case of *Allegre's administrators vs. The Maryland Insurance Co.* 2 *Gill and John.* 136. A knowledge of this fact previous to the execution of the policy must be shown in the underwriter; or an imputed knowledge by proving that on the voyage insured live stock is the only article of commerce. But it is insisted that a knowledge of the nature of the cargo must be imputed to the underwriters, because they gave the assured the liberty of *Martinico*, which confers the license to trade there. This

position cannot be sustained. It rests on a principle of false logic, universally exploded: It draws a general conclusion from an isolated fact. The grant of a license conferring a a power to do a variety of acts, does not necessarily imply the commission of all the acts authorized. Had the design of the assured been, to call at *Martinico* for a clearance, or to obtain supplies necessary to the prosecution of the voyage, or to do any act, or transact at *Martinico* any business, wholly unconnected with the trade carried on between *La Plata* and *Martinico*, the license in such case required, and that in this case granted, would have been identically the same. In requiring the liberty of *Martinico*, the insured did not necessarily notify the insurer, that the object of the privilege was to trade at *Martinico*, and was not therefore an unequivocal intimation of the nature of the cargo. And if we advert to the circumstances attending this insurance, so far from their intimating to the assurers that the cargo was of live stock, the reverse was the natural conclusion to have been drawn from them. According to the decision of this court in the case in 2 *Gill and John.* 136, when insurance is demanded on live stock, it is the duty of the assured to notify the assurers of the the nature of the cargo, and his failure to do so vitiates the policy. Of this principle of the law of insurance, the underwriters in this case must be presumed to have had knowledge. From the order for insurance, apart from the liberty of *Martinico*, the necessary inference was, that the thing insured was a dead cargo, and giving to the order of insurance and policy a fair and reasonable legal construction, this inference is not controlled by the privilege granted as to *Martinico*. If the design of this liberty was, as has been urged, to terminate the voyage, and sell the whole cargo at *Martinico*, should the market prove favourable, *Martinico* would have been made one of the *termini* of the voyage; and a proportionate return of premium would have been provided for in the event of the voyage terminating there. Such an omission was the strongest implied intimation that could be given, that the object of the assured in requiring the liberty of *Martinico*,

26　　v.8

was not that now ascribed to it in the argument; and there is nothing in the proof offered which would give to the policy a different interpretation from that, which on its face it purports to bear.

JUDGMENT AFFIRMED.