(Decided March 27th, 1896).

---

# FREDERICK TURNBULL *vs.* HOME FIRE INSURANCE COMPANY.

*Fire Insurance—Use of Gasoline—Concealment—Forfeiture of Policy —Agency of Broker—Estoppel—Rate Fixed by Association of Fire Underwriters.*

In an action to recover for a loss on a policy of fire insurance which provided that it should be void if gasoline be used on the premises, and where the defence is that gasoline was used, no evidence is admissible to show that the fire which caused the loss was not started or caused by gasoline.

The assured owned two adjoining buildings.  He obtained insurance upon one of them by a policy in the G. company, which allowed the use of gasoline for illumination upon a rating of $1.90 per hundred made by the inspector of the Association of Fire Underwriters, one dollar of said rate being estimated for the use of gasoline.  This rating was furnished to the members of the association.  Subsequently the assured, through a broker, obtained insurance upon the other building in the defendant company at the same rate.  This policy provided that it should be void if the defendant concealed or misrepresented any material fact, or if gasoline was kept or used on the premises.  Gasoline was there used, but the defendant had no knowledge of it until after a loss.  In an action on the policy, *Held,*

1st. That the fact of insurance by the defendant at the same rate as that fixed for the first-mentioned building, in which gasoline was allowed, did not constitute notice to the defendant, also a member of the association, that gasoline was to be used on the premises covered by its policy.

2nd. That the failure of the broker employed by the assured to dis-

close to the defendant the fact that gasoline was used on the premises was the concealment of a material fact and avoided the policy.

In the above action evidence by the defendant is admissible to show that there was nothing in the rate charged for insurance to affect it with knowledge that gasoline was used in the premises so as to constitute a waiver of the condition against its use.

The broker who obtains an insurance at the request of the assured is his agent.

Appeal from the Court of Common Pleas, where the case was tried before the Court without a jury.    The plaintiff offered the following prayers :

I. If the Court shall believe from the evidence that the Home Fire Insurance Company of Baltimore City underwrote a policy of fire insurance for $1,000, on the building on the west side of Streeper street, communicating with Nos. 2805 and 2807 Hudson street, in Baltimore City, on the 11th of April, 1893, for the owner, Eugene Fisher, for one year from said date, and charged and collected from the insured therefor the premium of $29.00 ; that it caused the said policy to be indorsed " Loss, if any, payable to Sycamore Permanent Building and Savings Association, No. 1, first mortgagee, and Frederick Turnbull, second mortgagee, as interest may appear ;" that the said building was damaged or destroyed by fire on the 9th day of December, 1893, and that at the time of the said fire the interest of said Turnbull, mortgagee, amounted to at least $1,000, then the loss, if any there be, under the policy, is payable to the said Turnbull upon his procuring a release to the defendant from the first mortgagee, in accordance with the terms of an agreement entered into by the counsel hereto.  ·

II. If the Court shall believe from the evidence that there existed at the time the said policy was written an Association of Fire Insurance Companies in the city of Baltimore, commonly known as the " Association of Fire Underwriters of Baltimore City ;" that the defendant was a member of said association at the time the said policy was written ; that the said association furnished its members with a schedule of rates on buildings in Baltimore City, which fixed the

minimum rates upon which premiums could be calculated without incurring punishment at the hands of the association ; that said rates and revisions of the same were provided members of the same regularly by an agent of the association ; then any member of said association making use of said rate or schedule was as fully and conclusively bound thereby as if it had been made by an agent solely and individually in the employ of said company.

III. If the Court shall believe from the evidence that a premium was charged to and collected from the insured by the defendant in this case ; that it was based upon a rate established by the Association of Fire Underwriters of Baltimore City ; that the defendant was at that time a member of said association ; that the said rate included a specific charge of $1.00 per hundred for the use of gasoline ; that the itemized charges upon which the said rate was based were in the office of the Fire Underwriters' Association, and that they were always accessible to members of said association ; that the insured, in the payment of the premium, knew he was paying for gasoline ; that he used gasoline as an illuminant constantly after the policy was effected ; that the negotiations for writing said policy were conducted with the president of said company ; that the policy of insurance contained an uncancelled clause declaring in effect that the policy would " be void if gasoline were used ; " that it contained also a clause declaring that " no officer, agent or other representative should have power to waive any provision or conditions except as subject to indorsement thereon ;" that permission to use gasoline was not indorsed on said policy ; that then the proper legal construction of the policy is that the use of gasoline as an illuminant by the insured did not forfeit the policy.

And the defendant offered the following motion and the following prayers :

The defendant moves the Court to strike out all of the plaintiff's testimony admitted subject to exception, which relates to the including by the chief inspector of the Board

of Fire Underwriters of the sum of $1.00 for gasoline in the minimum rate of $1.90 established by the board in November, 1889, for property adjacent to that referred to in the policy offered in evidence in this case; the plaintiff having offered no evidence to show that the defendant had knowledge of the facts testified to by the chief inspector as a witness.

*Defendant's 1st Prayer.*—The Court rules as matter of law that under the pleadings and evidence in this case, there is no proof that the defendant has ever waived the benefit of the condition in the policy in suit forbidding the use of gasoline in the insured premises, and the plaintiff having admitted the use thereof, the verdict must be for the defendant.

*Defendant's 2nd Prayer.*—The Court rules as matter of law that there could be no waiver by the defendant company of any condition in the policy, unless there was an intention on the company's part to waive the same, and if the Court finds that the defendant company had no knowledge until after the fire of the use, as admitted by the plaintiff's replication, of gasoline in the insured premises, that the company did not in the issuance of the policy waive the condition thereof avoiding the insurance, if gasoline were so used.

*Defendant's 3rd Prayer.*—The Court rules as matter of law, that if it finds that the defendant company had no knowledge, until after the fire, of the use, as admitted by the plaintiff's replication, of gasoline on the insured premises, the fact that it charged the rate of $1.90 does not in itself, under the facts testified to in evidence, constitute a waiver of the condition of the policy against such use of gasoline.

*Defendant's 4th Prayer.*—That in making the application for insurance, the broker, Koppelman, was the agent of the insured, and that the latter was bound by the contents of the application and the representations made to the defendant company in connection therewith, and if the Court finds that neither the application nor the representations revealed the fact that gasoline was used or was intended to be used

on the insured premises, and that Koppelman did not inform
defendant company thereof, and that the company was igno-
rant of the same until after the fire, then the plaintiff cannot
recover, although the Court may find that the defendant
was a member of the Board of Fire Underwriters and might
have ascertained upon application that the minimum rate of
$1.90 established by that board for adjacent property of the
insured included an estimate of $1.00 for gasoline.

*Defendant's 5th Prayer.*—If the insured at the time of his
application for the policy sued on, concealed or misrepre-
sented the fact that he was using or intended to use gasoline
on the insured premises, and that defendant had no knowl-
edge thereof until the fire, then the verdict must be for the
defendant, plaintiff having admitted such use of gasoline by
the insured.

The trial Court (DOBLER, J.) granted the first prayer of
the plaintiff and the motion and all the prayers of the de-
fendant, and rejected the other prayers of the plaintiff.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Ralph Robinson,* for the appellant.

The second prayer of the appellant submitted the propo-
sition (*a*), that if upon the facts therein stated the relation of
principal and agent should be found to exist between the
Board of Underwriters and the chief inspector, then (*b*) any
member of the Board of Underwriters (and the appellee if a
member) using a rate made by the chief inspector was as
fully bound by (his) acts in making the rate, so adopted and
used, as if he had been employed immediately and solely
by the member itself.

If an individual, *A*, employs *B* to make ratings for risks,
certainly *A's* liability is coextensive with all acts done by *B*
in and about that work that fall within the common scope
of his employment.    *York Co. Bank* v. *Stein,* 24 Md. 447 ;
*Dietrich* v. *Balto. and Hall Springs Ry.,* 58 Md. 347 ; *Story
Agency,* secs. 443 *et seq.,* sec. 451.    If, on the other hand,  .

*A, B, C*, individuals, instead of employing *C, D, F*, separate agents, to make various ratings for them, agree to form an ordinary association, *X*, and employ a common agent, *Y*, to make the ratings, is the liability of *A, B, C* in any way altered for the ratings made by *G* and adopted and used by them, or any of them? The mere fact that the brick addition upon which the insurance was placed had not itself been surveyed by the chief inspector in no wise absolves the appellee from liability imposed by the rating. Whilst schedules of rates must be based on an actual survey, *i. e.*, of some building, there is nothing, says Taylor, the appellee's witness, to prevent a member of the association from applying a rate furnished by the association for a building to an adjoining building or addition. Undoubtedly it was the application of this rule that the appellee's president availed himself of in this case. Koppelman, who offered the risk to Williams, had insurance on Fischer's property. He knew Fischer used gasoline; he was satisfied with the rate of $1.90 as a satisfactory compensation. He did not decline to write Fischer's insurance because the brick addition had *not been surveyed*, nor because the rate was too low. They were both members of the same protective association, the Board of Underwriters. Both held high official position in their respective companies. Under these circumstances, is it a reasonable assumption that Koppelman meant to betray Williams into writing this insurance by misrepresenting the fact that the building had been surveyed by the chief inspector? Is it not more reasonable to assume that in mentioning the rate, $1.90, Koppelman meant to be understood that under the rules of the association the *permissible* rate was $1.90? What could be urged as the motive for the deception? Koppelman had exactly similar insurance in his company, and the petty brokerage commission that he secured is too trifling to be considered. Suppose, however, in the face of the unchallenged testimony of Taylor, that the rules of the association forbade the application of the rate of one building to an additional unsurveyed building, and that

Williams, the president of the appellee, acted on the supposition that the building insured had been rated by the association at $1.90, when, as a matter of fact, it had not, can it be urged, in the name of justice, equity or fair dealing that he assumed this supposition under circumstances that would shift a loss from his shoulders to those of the insured?

It is conceded that the appellee had no actual knowledge that the rate $1.90 included the specific charge of $1.00 per hundred, for the use of gasoline. If then they are not charged with notice of knowledge of this fact *by law*, the appellant's contention must fail, for the question of knowledge is a requisite element in the doctrine of "equitable estoppel." How can the appellee escape this imputation? The chief inspector is the agent of the appellee in making the rate, the very moment that the appellee adopts this rate, and the appellee is effected with knowledge of the agent's acts done in and about such rating. That the president of the appellee adopted this rate because it was the rate of the Board of Underwriters—*i. e.*, made by the chief inspector, and he approved of it as such, we have the unequivocal testimony of Williams and Koppelman, too. He did not adopt the rate as a random figure, suggested by Koppelman, which struck him as fair. " The premium he charged," says Koppelman, " was whatever the board rate was of the Fire Underwriters. I mean the rate promulgated by the board. There was a slip showing what the rate was." " I took it for granted," says Williams, president of the defendant company, " that this rate furnished by Mr. Koppelman was the rate of the Board of Underwriters." If the appellee had rejected the rate, $1.90, as it had a right under the rules of the association to do, and had charged a higher rate of their own, the question of agency *vel non* might be presented in a different aspect, and this consideration alone serves, it is respectfully submitted, to establish the appellant's contention beyond the necessity of further discussion. The chief inspector having been employed by the appellee for the specific purpose of making rates, the imputation of

knowledge to the principal, the appellee, of how these rates were made and the specific charges which they included, cannot fairly be contested. *Story on Agency*, sec. 140 (9th edit.); *W. M. R. R.* v. *Franklin Bank*, 60 Md. 36.

*Samuel D. Schmucker* and *George Whitelock*, for the appellee.

RUSSUM, J., delivered the opinion of the Court.

The appellant (plaintiff below) brought suit in the Court of Common Pleas of Baltimore City against the appellee (defendant below) to recover the loss by fire of $812.54, upon a policy of insurance on a two-story brick building situate on the west side of Streeper street, attached in rear of and communicating with the brick building Nos. 2805 and 2807 Hudson street, corner of Streeper street, the whole occupied as a bleaching and dyeing establishment by one Eugene Fisher, the loss under which was payable to the plaintiff as mortgagee of said Fisher. This policy was issued April 11th, 1893, and declared that it was " made and accepted " subject to certain conditions, among which were the following : 1st. That it should be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning said insurance, or the subject thereof ; and 2d. If (any usage or custom of trade manufacture to the contrary notwithstanding) there be *kept, used* or *allowed* on the insured premises benzine, benzole, dynamite, ether, *gasoline* or petroleum of greater inflammability than kerosene of the United States standard (which *last* may be kept for light) and kept for sale according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight, or at a distance of not less than ten feet from artificial lights. These conditions were pleaded by the defendant company in answer to the declaration, and the case was tried in the Court below upon two issues : (*a*) Whether there had been any concealment by the insured of any material fact con-

cerning the insurance, or the subject thereof; and (*b*) whether the defendant company had consented to the use of gasoline and waived the condition of the policy relating thereto.   It appears from the evidence that Fisher, the insured, held a policy for $2,500.00 on the building Nos. 2805 and 2807 Hudson street, issued by the German Fire Insurance Company, of which one Koppelman, a licensed insurance broker, was vice-president.   This policy contained a written clause allowing the use of gasoline for illuminating purposes, and was issued in the month of November, 1889, upon a rating of one dollar and ninety cents per hundred, made by the chief inspector of the Association of Fire Underwriters of Baltimore City, of which association both the German Fire Insurance Company and the defendant company were members.   This rating was made upon a slip of which contained a list of the " deficiencies," the rate charged for each, and showed that one dollar of the one dollar and ninety cents per hundred fixed as the rate for calculating the premium on this (Hudson street) building, was estimated for the use of gasoline for illuminating purposes.   The total rating, but not the items, was furnished to the several members of the association, and the itemized " slips " were open to the inspection of the members, who might desire to see them.   The building on Streeper street, and which was attached in the rear of, and communicated with the Hudson street building, was never surveyed or rated by the association.

Fisher, the insured, applied to Koppelman for insurance on the Streeper street building in the German Fire Insurance Company, which was declined ; whereupon he accepted Koppelman's offer to place it for him in another company. Koppelman sent his clerk to inspect the building and then wrote up the application for insurance on behalf of Fisher and took it to Williams, the president of the defendant company, who inquired what the rate was, and being told that it was $1.90 per hundred, issued the policy sued on, and delivered it to Koppelman, by whom it was delivered to Fisher.

At the trial of the case below, four exceptions were taken by the plaintiff. The first and third exceptions relate to the refusal of the Court to allow the plaintiff to offer evidence tending to prove that the fire which destroyed the building " was not started or caused by the use of gasoline." This testimony was clearly inadmissible, because it was not relevant to any issue made by the pleadings, or which could have been properly framed in a suit on the policy which is the subject-matter of this controversy. The condition of the policy was that it should be void if, among other things, *gasoline* was *kept, used* or *allowed* on the insured premises, and the question was whether there had been any violation of this condition on the part of the insured. The *cause* of the fire was not, in any way, involved, and as such testimony was calculated to mislead the jury it was properly rejected. *Howell's Exr.* v. *Balto. Eq. Society*, 16 Md. 386, 387 ; 1 *May on Insurance*, sec. 220 ; *Parson's Merc. Law*, 505 ; *Kyte* v. *Com. Union Asso. Co.*, 149 Mass. 123.

The second exception was to the overruling of the plaintiff's objection to evidence, offered by the defendant, tending to prove that the rate of one dollar and ninety cents, per hundred, was not an unusual rate—not such a rate as, at the time the policy sued on was issued, would indicate to the insurer the fact that gasoline or any other material, equally hazardous, was to be kept, used, or allowed on the insured premises. The record shows that it was conceded in the Court below, as it was in the argument in this Court, that the defendant company did not have actual knowledge that gasoline was to be used on the insured premises ; but, it was claimed, that it should be held responsible on the ground that, being a member of the Association of Fire Underwriters which had rated Fisher's Hudson street building at one dollar and ninety cents per hundred, which rate included a charge for gasoline, and having issued the policy sued on at that rate, there was an adoption by the defendant company of the rating of the Hudson street building, and

that it was, therefore, affected with constructive knowledge that gasoline was to be used, and was being paid for, and should be held to have waived its right to interpose the clause of the policy prohibiting the use of gasoline as a bar to this. suit.   As will be seen hereafter, this testimony was not a necessary part of the defendant's case, but, if it saw proper to assume the burden of establishing a negative, there could be no valid objection to it, since it tended to prove that there was not, in the rate charged, anything that would put the insurer upon its inquiry, and charge it with .that full knowledge of all the facts which was necessary to constitute a waiver of the clause of the policy relating to gasoline. *Reynolds* v. *Mut. Ins. Co.*, *&c.*, 34 Md. 280 ; *Busby* v. *Life Ins. Co.*, 40 Md. 585.

The granting of the defendant's motion to strike out all the evidence of the chief inspector of the Association of Fire Underwriters, and the rejection of the plaintiff's second and third prayers, which constitute the fourth exception, raise substantially the same question, and they will be considered together.

The contention of the appellant is that the implied knowledge which resulted to the appellee from the rate of one dollar and ninety cents per hundred, established by the Association of Fire Underwriters upon the Hudson street building, in which gasoline was allowed to be used, gratified the provision of the policy requiring an express written permit to be endorsed on it, and the appellee, therefore, was equitably estopped from pleading this condition in its defence. The doctrine of equitable estoppels is this : " Where one party has by his representations, or his conduct, induced the other party to give him an advantage, which it would be against equity and good conscience for him to assert, he would not, in a Court of Justice, be permitted to avail himself of that advantage."   It can only be relied on by a party who has been misled to his injury.   *Alexander* v. *Walter et al.*, 8 Gill, 241 ; *Ins. Co.* v. *Gusdorf*, 43 Md. 514 ; *Hardy* v. *Chesapeake Bank*, 51 Md. 562 ; *Hurt* v. *Ripple*, 11 Fed.

Rep. 970 ; *Leather Manufacturers' Bank* v. *Morgan et al.*, 117 U. S. 108.

Applying this principle to the case before us, after a most careful examination of the record, we have been unable to discover anything in the declarations or conduct of the president of the defendant company which tended, in any respect, to mislead a reasonably prudent man to his injury. To sustain the contention of the appellant in this case, would be to relieve the insured from the discharge of his duty to the insurer and to himself. These obligations were : (1) to state to the insurer every fact relating to this insurance and the subject thereof; and (2) to read his policy, neither of which appears to have been performed. On the contrary, if it be true, as claimed by Fisher, that Koppelman knew that gasoline was to be used in the insured building, then, the proof is that intentionally, or otherwise, this information was not communicated to Williams, the president of the defendant company, who issued the policy. And, whether this omission was intentional or not, the insured is bound by it, because Koppelman was *his* agent and not the agent of the insurer. He wrote the application for the insurance and took it to Williams for Fisher, at his request.

Even if it be conceded (for the sake of the argument) that the rate by which the premium was calculated did constitute an "awakening circumstance," yet that mere fact was not sufficient to relieve the insured (or his agent) from his obligation to declare to the insurer that his purpose was to use gasoline. *Allegre* v. *Md. Fire Insurance Company*, 8 Gill & Johnson, 190 ; 2 G. & J. 162 ; *Augusta Ins. Co.* v. *Abbott*, 12 Md. 374. As a depositor in a bank is under the duty of examining his pass-book and the vouchers returned with it, in order to ascertain if his account is correctly kept, so the insured was under the duty of reading his policy, so as to know whether its provisions were in accordance with his application, and the amount of premium charged. If Fisher had performed this plain duty, which ordinary diligence in his affairs required, he would have discovered that by the

terms of his policy he was forbidden to "*use or allow*" gasoline on the insured premises, and this suit might have been avoided. *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 106. The testimony of the chief inspector of the Association of Fire Underwriters related entirely to the rating of the Hudson street building, the items which made up the rate, and the custom of the association in furnishing the ratings to its members, and was offered for the manifest purpose of proving constructive knowledge by the president of the defendant company, as to the purpose of the insured to use gasoline, and of excusing Fisher from disclosing to the defendant company every fact and circumstance which could possibly influence the mind of an intelligent insurer.    It was legally insufficient for that purpose, because, by the express terms of the contract its validity depended on a full disclosure, *by the insured*, of every material circumstance relating to the insurance, or the subject thereof, and the endorsement thereon of the permission to use gasoline.    It was conceded that no such disclosure was made, and the mere fact that this policy was issued at the rate fixed by an association, of which the defendant was a member, *on an adjoining* building, was not sufficient to enable the assured to escape the consequences of the neglect of the plain obligation imposed on him by the contract, which he accepted, and knowledge of which is presumed from such acceptance. *Allegre* v. *Ins. Co.*, 8 G. & J. 190; *Ins. & Banking Co.* v. *Abbott*, 12 Md. 374; *Reynolds* v. *Ins. Co.*, 34 Md. 280; *Busby* v. *Life Ins. Co.*, 40 Md. 585–6; *Beck et al.* v. *Hibernia Ins. Co.*, 44 Md. 106.    Besides, the record shows that notwithstanding the granting of the defendants motion to strike out the testimony of the chief inspector of the Board of Fire Underwriters, it was treated by the Court, in its rulings on the defendant's prayers, as still before the jury, and, therefore, no injury resulted to the plaintiff therefrom.

It appears from the record that no exception was taken to the granting of defendant's prayers, but inasmuch as they were discussed, as if excepted to, we think it proper to say

that, for the reasons stated, the ruling of the Court below thereon was correct, and that the defence of the company is a bar to any suit on this policy. The judgment will, therefore, be affirmed.

*Judgment affirmed.*

(Decided May 8th, 1896).