JAMES B. O'BRIEN, Respondent, *v.* THE PRESCOTT INSURANCE COMPANY, Appellant.

Defendant's general agent issued a policy of fire insurance which contained provisions to the effect that it should become void if the premises insured became vacant without the written consent of the company indorsed thereon, and that no part of the policy could be waived except in writing, signed by defendant's secretary. The premises insured having become vacant, the insured informed said agent of the fact and asked how it would be in case the buildings insured were burned, and was informed it would be all right. The buildings were thereafter burned. In an action upon the policy, *held*, that the stipulation as to occupancy was an express warranty, and, not having been performed or waived, the policy was void.

*Pechner* v. *Phœnix Ins. Co.* (65 N. Y. 195); *Ins. Co.* v. *Wilkinson* (13 Wall, 222), distinguished.

(Argued April 19, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 7, 1890, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This was an action upon a policy of insurance, whereby the defendant insured one Patrick O'Brien against loss or damage

by fire to his building in West Troy, used as a grocery store, meat market and dwelling, for the term of one year from January 3, 1882. The policy was continued in force by renewals until January 3, 1886. It was issued and counter-signed by one Hulsapple, the agent of the defendant, who, " as such agent, appraised the value of buildings on which the defendant was asked to issue policies of insurance, received applications for insurance, issued policies and renewals thereof, received the premiums in payment thereof, and in some cases adjusted losses and transacted the general business of the defendant in the village of West Troy." The building so insured was partially destroyed by fire on the 28th of December, 1885, at which time it was not occupied, and had not been since the middle of the preceding month. During November, 1885, the agent of the insured called on the agent of the company " and informed him that the building was vacant, and inquired how it would be in case it burned. Said Hulsapple replied that it was all right as long as he notified the agent." Not long after the fire occurred said Patrick O'Brien transferred the policy to his son, the plaintiff in this action. The referee found the foregoing facts, among others, and ordered judgment in favor of the plaintiff for the sum of $800, besides interest.

Further facts appear in the opinion.

*A. H. Sawyer* for appellant.

*John H. Gleason* for respondent.

Vann, J.—The policy in question was issued to the plaintiff's assignor " subject to the following terms and conditions : (1) Warranty of the assured : The assured, by the acceptance of this policy, hereby warrants that any application, survey, plan, statement or description connected with procuring this insurance, or contained in or referred to in this policy is true, and shall be a part of this policy ; * * * and this company shall not be bound under this policy by any act of, or

statement made to or by, any agent or other person which is not contained in this policy, or in any written paper above mentioned. * * * This policy shall become void unless consent in writing is indorsed by the company hereon, in each of the following instances : * * * If any building herein described be or become vacant or unoccupied for the purposes indicated in this contract." Various other conditions follow in groups, with appropriate headings, numbered from two to six inclusive, and at the end of all the conditions, and just before the attestation clause, is the statement " that this policy is made and accepted upon the above express conditions, no part whereof can be waived, except in writing, signed by the secretary." The referee found that " the building at the time of the fire was not occupied by any person for the purpose indicated in the policy of insurance," and that " no written consent of any description was ever given by the company or its agent that such building might be or remain vacant or unoccupied."

The stipulation in regard to occupancy was an express warranty, and, unless it was either performed or waived, the policy became void. (*Halpin* v. *Phenix Insurance Co.*, 118 N. Y. 165 ; 23 N. E. Rep. 482 ; *Herrman* v. *A. F. Insurance Co.*, 85 N. Y. 162.) As it was not performed, the validity of the contract depends on whether it was waived, and the question of waiver depends upon the power, actual or implied, of the agent who issued the policy for the defendant. The referee found, as a conclusion of law, that said agent " had authority to waive by oral consent any condition in the policy in question," and that he did orally waive the warranty under consideration. The learned General Term based its judgment of affirmance mainly upon the case of *Pechner* v. *P. Insurance Co.* (65 N. Y. 195), where it was held that a general agent, authorized to issue policies and write consents thereon, had power to bind the company by a parol waiver of warranty against other insurance. In that case, however, there was no provision in the policy limiting the power of the agent, " who testified, without contradiction, that he had issued hundreds

of  *  *  *  consents to further insurance." (Page 208.) The courts below also relied upon *Insurance Co.* v. *Wilkinson* (13 Wall. 222), where it was held that an insurance company is responsible for the acts of its agent, within the general scope of the business intrusted to his care, and that no limitation of his authority, unless brought to the knowledge of the persons with whom he deals, will be binding upon them.

Mr. Hulsapple was the general agent of the defendant at West Troy, and unless his powers were expressly limited, and the insured had notice of the limitation, he will be presumed, from the nature of his agency, to have had power to modify the contract that he made, and to waive strict compliance with the conditions therein contained. While it does not appear that, except in this instance, he ever consented in behalf of the company that a building insured by it might be or remain vacant or unoccupied, the power to give such consent, in the absence of known restrictions upon his authority, may be fairly inferred from the powers that he habitually exercised. (*Whited* v. *G. F. Insurance Co.*, 76 N. Y. 415.)

The policy had been in the possession of the plaintiff's assignor for more than three years when the fire occurred, and hence, if the contract itself contains clear restrictions upon the power of the agent, the insured must be presumed to have had notice thereof. The provision that the company will not be bound by any act or statement 'not contained in the policy, application, etc., has no bearing upon the point in controversy, as it relates only to acts done and statements made before the policy was issued. It is provided, however, that the policy shall become void, unless consent in writing is indorsed thereon by the company, if the building insured shall be or become vacant or unoccupied, and that the policy was made and accepted upon this as one of many express conditions, "no part whereof can be waived, except in writing, signed by the secretary." This provision in regard to waiver applies to all the conditions preceding it, and not simply to those immediately preceding it, which relate only to "proceedings in case of loss." Upon reading all the pro-

visions of the policy together, it appears that the first part embraces the agreement of the company to insure the building in question for a certain amount during a specified period. This is followed by the agreement in behalf of the insured consisting of various "terms and conditions," under the following titles, viz.: "(1) Warranty of the assured," under which appears the condition relating to occupancy. Then follow in the order named: "(2) Risks not covered by this policy." "(3) Property not covered by this policy unless specified." "(4) General privileges." "(5) Relative to issue and cancellation of policy." "(6) Proceedings in case of loss." Under each title are different specifications relating to the subject thereof. At the close of the last specification is the provision, said to have been printed in large type so as to attract attention, that "this policy is made and accepted upon the above express conditions, no part whereof can be waived except in writing, signed by the secretary." Thus it is evident that the parties agreed, in terms: (1) That the policy should become void in case the premises became vacant or unoccupied, unless the "company" consented in writing, indorsed thereon; (2) that this condition could not be waived, except in writing, signed by the secretary. Assuming that the provision relating to written consent, if it stood alone, might be waived by an agent possessing general powers, such a result cannot follow when the power to waive is taken away from the agent and conferred upon the secretary only. By agreeing that the secretary alone could waive, the parties necessarily excluded the agent from exercising that power. The apparent authority of the agent was thus limited by a restriction in the body of the policy, assented to by the assured as a part of the contract, and possessing the same binding force as any other provision therein contained. There was no usage, recognition or ratification to take the case away from the agreement as originally made. The attempt of the agent to waive by parol was made years after the issue of the policy, and it was the duty of the assured to read his contract and conform to its provisions. By accepting the

policy, he assented to a limitation of the power of the agent. Having thus agreed, he was bound to know the extent of the limitation, and act accordingly. The rule may be harsh in its application to a given case, but if insurance contracts are to be construed according to the language used in making them, in conformity to the principles governing the construction of other contracts, it must be applied in this case, which is thus brought within the authority of *Walsh* v. *H. F. Insurance Co.* (73 N. Y. 5), and *Marvin* v. *U. L. Insurance Co.* (85 id. 278).

The policy in the *Walsh* case contained a warranty against vacancy, and a stipulation that no officer or agent should be held to have waived any condition unless such waiver should be indorsed on the contract. On the day that the building insured became vacant, a general agent of the company orally consented that it might remain so. When asked if it was necessary to have the consent indorsed upon the policy, he replied that it was not. He made a memorandum of the consent in his policy register, but made no indorsement on the policy, or report to the company. It was held that there could be no recovery, because the oral consent was an act in excess of the known authority of the agent. The court said : " That the agent was authorized to consent to the vacancy by a written indorsement on the policy is clearly implied from the language of the condition, and if the mode in which his consent should be made manifest had not been specified, or if no provision on the subject had been contained in the policy, we do not doubt that he could have consented either orally or in writing, and that his consent in either mode would have bound the company. * * * But the policy contains the provision that no agent of the company shall be deemed to have waived any of the terms and conditions of the policy, unless such waiver is indorsed on the policy in writing. This is a plain limitation upon the power of agents, and can mean nothing less than that agents shall not have the power to waive conditions, except in one mode, viz., by an indorsement on the policy. The plaintiff is presumed to

have known what the contract contained, and the proof tends
to the conclusion that this provision was brought to his notice.
He saw fit, however, to accept the assurance of the agent that
an entry in the register was sufficient. It is difficult to see how,
upon the law of contracts and agency, the plaintiff can recover.
\* \* \* The authority of an agent is not only that con-
ferred upon him by commission, but also, as to third persons,
that which he is held out as possessing. The principal is often
bound by the act of his agent in excess or abuse of his actual
authority, but this is only true between the principal and
third persons, who, believing and having the right to believe
that the agent was acting within and not exceeding his author-
ity, would sustain loss if the act was not considered that of
his principal. If, however, a person dealing with an agent
knows that he is acting under a circumscribed and limited
authority, and that his act is in excess of or an abuse of the
authority actually conferred, then manifestly the principal is
not bound, and it is immaterial whether the agent is a general
or a special one." In the *Marvin* case (*supra*), the plaintiff
relied upon a parol waiver of a certain condition by a general
agent of the company. The policy contained a provision that
any alteration or waiver of its conditions, " unless made at
the head office and signed by an officer of said company,"
should not be considered as valid. It was held that, although
the agent had authority, unless restricted, to waive conditions,
as his authority was limited by the provisions of the policy,
and so brought to the knowledge of the assured, he had no
authority to waive the condition or to agree that it should be
waived. The court commented upon *Pechner* v. *Insurance
Co.* and *Insurance Co.* v. *Wilkinson* (*supra*), and, after quot-
ing the rule laid down in the latter, as already stated, said :
" The rule could not go further than this without violating
all reason and justice. To carry it further would compel us,
in the end, to say that insurance companies are wholly at the
mercy of their general agents, and no restraint is possible."
We regard these authorities as analogous and controlling, and
we gave due effect to them in deciding the recent case of

*Messelback* v. *Norman* (122 N. Y. 578; 22 N. E. Rep. 34). In *Steen* v. *N. F. Insurance Co.* (89 N. Y. 315), which is relied upon by the plaintiff, the powers of the general agent were not restricted. The court alluded to the *Walsh* case and others, and said that they were in favor of the company, " on the ground that by the terms of the policies in question the power of the agent was limited, and the authority he assumed had been reserved by the company to its officers, or was to be exercised only at the head office, and authenticated by one of its officers. Such reservation is not to be found in the policy before us." The court thus distinctly recognized the principle upon which this decision is based, but did not apply it, because the powers of the agent were not limited by the policy then under consideration.

After considering all the grounds upon which we are asked to affirm the judgment appealed from, we think that it should be reversed and a new trial granted, with costs to abide event.

All concur, except LANDON, J., not sitting.

Judgment reversed.