OSHKOSH MATCH WORKS, Respondent, vs. MANCHESTER FIRE ASSURANCE COMPANY, Appellant.

*February 18 — March 10, 1896.*

*Insurance against fire: Breach of condition in policy: Sale of undamaged property: Waiver: Agency.*

1. A condition in a policy that in case of a fire the insured should forthwith separate the damaged and undamaged property, make a complete inventory of the same, and as often as required exhibit to any person designated by the company all that remained

Oshkosh Match Works vs. Manchester Fire Assurance Co.

of the property insured, is *held* to have been broken, so that there could be no recovery on the policy, where the insured, after a fire, at once sorted out the undamaged property, and sold it and shipped it away before the arrival of the company's adjuster.

2. A local agent of an insurance company has no power, after his connection with the writing of a policy has ceased, to waive conditions therein.

3. An oral waiver of conditions in a policy, by a local agent, after a loss, is ineffectual, where the policy provides that there shall be no waiver of any of its provisions unless it be written thereon or attached thereto.

4. An insurance company does not waive conditions in its policy by requiring an examination of the insured after it has received proofs of loss, where the policy expressly provides that no waiver shall arise in consequence of any requirement, act, or proceeding on its part relating to such an examination.

APPEAL from a judgment of the circuit court for Winnebago county: N. S. GILSON, Judge. *Reversed.*

Action on a policy of fire insurance issued by the defendant to the plaintiff, to recover the value of 1,247 cases of matches, alleged to have been totally destroyed by fire, and $135.75 for injury caused by the same fire to 908 other cases of matches, all insured by the defendant in the amount of $1,500, except as in the policy provided, which contained the provisions of the "standard fire insurance policy," so-called, under the act of 1891 (ch. 195). The defense was that the plaintiff had not fulfilled and performed the conditions of the policy on its part; that by the terms of the policy, as the fact was, it was stipulated that if fire occurred the plaintiff was to protect the property from further damages, forthwith separate the damaged and undamaged personal property, put it in the best possible order, and make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon, and, as often as required, should exhibit to any person designated by the defendant all that remained of the property therein described. It also contained the usual agreement for appraisal in case

of disagreement as to the amount of loss, and that the company should not be held to have waived any provision or condition of the policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination therein provided for; and the loss was not to become payable until sixty days after notice, ascertainment, estimate, and satisfactory proof of the loss had been received, including an award by appraisers when an appraisal had been required; and it was stipulated that no officer, agent, or other representative of the defendant should have the power to waive any provision or condition of the policy, except such as by its terms might be the subject of an agreement indorsed thereon or added thereto, and then only when written thereon or attached thereto, and no privilege or permission affecting the insurance under the policy should exist or be claimed by the insured unless so written or attached. The defendant alleged, and the evidence at the trial was, that immediately after the fire the plaintiff recased about 908 cases of the insured stock of matches, and shipped them out of the state, without the knowledge or consent of the defendant, and that the remainder of the stock, not actually burned, but damaged, and, as it was claimed by the plaintiff, destroyed, was burned up; and the defendant claimed that this was done with intent to deceive the defendant and prevent it from ascertaining the amount of the loss or damage, and to prevent an appraisal, and to defeat its right to take the damaged goods at their appraised value.

The evidence was that the fire occurred October 31, 1893, in the plaintiff's warehouse building, where manufactured matches were stored for shipment. As soon as it possibly could, it got the matches not burned put into the factory, and what they could not get into the factory they put into the yard, and threw a shed over them, and put a crew at work on them, as the water on the outside would soak into the cases. Some of the cases were burned up entirely, some

·of the ends burned off, some not burned a particle, but not any that were not wet. The fire department had played on 'them for two hours with four or five streams. The cases were opened, as well as the small boxes. If the matches were dry, they were repacked and put in new cases. Those 'that were wet, with the old cases and wrappers, were thrown into a barrel, and removed and burned up in the yard. In this manner 908 cases were saved. Six hundred cases were absolutely destroyed. The other 600 or 700 cases, what remained ·of those not burned up, were of no marketable value; still, after they had been dried out, they would burn as well as ·ever. When matches have been wet, the color runs down the sticks, and they swell up, and get out of shape, and get crooked, and the heads stick together, and the matches are not in this condition marketable, and therefore they were burned up. The 908 cases saved were shipped to Louisville, Ky., five or six days after the fire. The worthless and debris were burned in the yard, because they were dangerous and would dry so as to ignite. Many of the 'cases were so wet that they could not be packed over, and more damage was done by water than by fire. The wet and damaged matches were considered valueless, were in the way of the company, and it could not take care of them, and they endangered surrounding property. Of these there were about 1,247 cases. Fred. Burgess, the plaintiff's secretary and treasurer, testified, under objection, that the next day after the fire, while they were at work hauling away and burning the remains, he saw McNabb, the defendant's local agent, who had seen the condition of things, and he said to witness: ·" You are doing all right. Go on as you are doing. Save ·all you can, and burn up the rubbish if you want to; no use 'to keep that." The defendant's adjuster arrived seven or eight days after the fire, and made some examinations, but made no objection to what had been done; discussed the amount of the loss; and went away, promising to return in

ten days. The plaintiff made the usual proof of loss, and defendant's manager promptly objected to the claim, by reason of the destruction of the property damaged, and the removal, sale, and disposition of the remainder, and that the plaintiff had thus put it out of the power of the defendant to submit the amount of the loss to appraisers and obtain an award according to the policy, and deprived it of the right to take the damaged property at an appraised valuation. The plaintiff asserted, in reply, that it got out of the pile of debris 908 cases of matches, and the balance were destroyed by fire and water, and related the conversation with the agent of the company, insisting that it had acted in good faith. About three weeks thereafter, its adjuster returned, and called for and had an examination of Burgess, the secretary and treasurer, under the policy, in respect to the amount and nature of the loss.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, which was denied. Defendant's counsel admitted that, if the plaintiff was entitled to recover at all, it was entitled to recover $1,500 and interest; and thereupon, and on motion, the court directed a verdict for the plaintiff for $1,577. From a judgment thereon in favor of the plaintiff the defendant appealed.

For the appellant there were briefs by *Eaton & Weed*, attorneys, and *Charles Barber*, of counsel, and the cause was argued orally by *H. I. Weed* and *Mr. Barber*.

For the respondent there was a brief by *Thompson, Harshaw & Thompson*, and oral argument by *A. E. Thompson*.

PINNEY, J. 1. Under the conceded facts in this case, we think that it is impossible to sustain or justify the direction of a verdict for the plaintiff. It is beyond dispute that there has been a breach of the conditions of the policy upon which the action is founded. The assured did not, as it agreed it would, after the fire, "forthwith separate the damaged and

undamaged personal property, put it in the best possible order, make a complete inventory of the same," and did not, "when required, exhibit to the defendant's adjuster all that remained of the property" described in the policy. On the contrary, without any excuse or reason whatever for it, except the desire to fill an order it had received, it sold and shipped to Louisville, Ky., 908 cases of the matches that had been saved by sorting them out of a large number of cases, the contents of which had been more or less injured, and repacking and placing them in new cases. The evidence fails to show that a single case had been saved from the fire in a wholly undamaged condition, but quite the contrary. All the matches not thus saved and repacked, although not useless, were unmarketable, and, with the cases and other debris, were removed and burned up in the plaintiff's yard. About 600 cases were so completely destroyed that nothing whatever was saved from them. It is not necessary to consider whether the matches which were not saved, and which were not wholly destroyed, may or may not fall within the category of damaged property, as contended by the plaintiff, or whether they might be regarded as wholly destroyed, because unmarketable; for, under the conceded facts, the sale and shipment of the 908 cases which had been so sorted out and saved, before the defendant's adjuster arrived upon the scene, was a clear breach of the condition of the policy, which worked an effectual forfeiture of its obligations. It was the duty of the plaintiff, under the policy, after having selected the matches put in these cases from damaged or unmarketable or worthless matches, to have exhibited or had them in readiness to exhibit to any person designated by the company, as all that remained of the property described in the policy. The plaintiff thus disabled itself from performing the plain requirements of the policy before the arrival of the adjuster, and had effectually put it out of the power of the company to take these cases, as it had the right to

do, at their appraised value. The defendant, when the proofs of loss were submitted, promptly raised these objections, and has not, we think, in any manner waived them. The conditions referred to are substantial and important, and are designed, among other things, to enable the company to fairly investigate and ascertain the loss, and to detect dishonesty and fraudulent practices. They were conditions for the protection of the company, to be performed after the loss, and until performed or performance had been duly waived no recovery could be had on the policy. We must regard these provisions as having been deliberately agreed to, and with the understanding that they were material and would be performed accordingly; and it is the duty of the court to give full effect to them as written.

2. The evidence as to what took place between the local agent of the defendant, McNabb, and Burgess, the secretary and treasurer of the plaintiff, wholly fails to show a waiver of the conditions. After his connection with the writing of the policy had ceased, McNabb had no authority, as local agent, to waive these conditions. *Hankins v. Rockford Ins. Co.* 70 Wis. 4; *Bosworth v. Merchants' F. Ins. Co.* 80 Wis. 393; *Stevens v. Queen Ins. Co.* 81 Wis. 335; *Bourgeois v. Mut. F. Ins. Co.* 86 Wis. 402. Besides, there is no claim that McNabb ever, in any way, authorized or consented to the disposition and removal of the 908 cases, and the alleged waiver by him as local agent was oral, and not in writing, as required by the terms of the policy. *Carey v. German Am. Ins. Co.* 84 Wis. 88; *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198; *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 606. The defendant, after the proofs of loss had been received, required an examination of Burgess, the plaintiff's secretary and treasurer; and he was examined accordingly, but by the terms of the policy it is provided that no waiver should arise in consequence of such requirement and examination. There is no other ground for imputing any waiver

to the defendant, or for holding that it is precluded from insisting on its defense. The circuit court, therefore, erred in refusing to nonsuit the plaintiff, and in directing a verdict in its favor.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.