FERDINAND GOEBEL AND THERESA GOEBEL,
·HIS WIFE,

vs.

THE GERMAN AMERICAN INSURANCE COM-
. PANY OF PENNSYLVANIA.

*Fire insurance: subdivision of risk; original insurer; when
agent for other insurers; terms of policy. Waivers
by agents. Notice of vacancy.*

An application was made to a company for fire insurance to
a certain amount; the company, being unwilling to underwrite
the whole risk, placed four-fifths of it with other companies, it
issuing its policy for one-fifth of the amount desired, and dis-
tributing the balance in four equal amounts among four other
companies; this was done without the knowledge of the assured
and without any consultation with him; the agent of the origi-
nal company, who had secured the business, redelivered the poli-
cies, collected the premiums and attended to the renewals; it
was: *Held,* that under the circumstances such original insur-
ance company was the agent for the others.          p. 427

Such agent of the original company had once received notice
that the property insured was temporarily unoccupied, and had
been authorized to waive the condition providing for the avoid-
ing of liability while the property was left vacant, unless notice
in advance had been given: *Held,* that such agent had implied
authority to accept notice of a vacancy, and that therefore such
notice given to him was constructive notice to the original com-
pany, and therefore to the other companies.       pp. 425-427

An insurance company which issues a policy and collects the premiums, with actual or imputed knowledge that warranties in it are contrary to the real facts, will not be permitted to defeat recovery by the assured, on the ground that the conditions stipulated for in the policy did not in fact exist.     p. 424

*Decided January 12th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert Biggs* (with whom was *John H. Dumler*, on the brief), for the appellants.

*W. Calvin Chesnut* and *Raymond S. Williams*, for the appellee.

URNER, J., delivered the opinion of the Court.

In July, 1913, a dwelling house belonging to the appellants, Ferdinand Goebel and wife, was totally destroyed by a fire which resulted from a stroke of lightning, and in this suit they seek to recover $1,000.00 from the appellee, the German American Fire Insurance Company of Pennsylvania, upon a policy providing insurance to that amount against such a loss. The policy was issued on April 8, 1913, for the period of one year. It was the last renewal of six similar policies for preceding annual periods. The indemnity thus provided was part of an aggregate insurance of

$5,000.00 on the dwelling, the remainder being represented by concurrent policies of $1,000.00 each issued by four other companies. The whole of this insurance was issued in consequence of an application made to the German Fire Insurance Company of Baltimore. Prior to April 8, 1904, the property mentioned, and other buildings of the appellants, had been insured elsewhere, but upon the expiration of the pre-existing insurance, about that time, the business was transferred by the appellants to the company just named at the request of Mr. Klausmeyer, one of its soliciting agents. The application was for $12,400.00 insurance on the appellants' buildings, including $5,000.00 on the dwelling subsequently destroyed. As the Baltimore company did not care to issue its own policy for the entire risk, it placed four-fifths of the insurance with four other companies in equal amounts. The record does not give the names of the other companies which participated in the insurance during the ensuing three years, after April 8, 1904, but it appears that in 1908 one-fifth of the amount was placed with the appellee company, and its policy then issued was the predecessor, in regular annual sequence, of the one now in suit.

The appellants had nothing to do with the division of the insurance. Their sole application was to the German Fire Insurance Company of Baltimore, and the risk was distributed by that company, in the manner described, without previous notice to the appellants that it declined to contract for the whole liability, and without any consultation with them on the subject. The companies selected for participation in the insurance were those which made reciprocal allotments of business to the German Fire Insurance Company in similar situations. All of the other policies contributing to this insurance were sent to the last named company, and, with its own policy for a proportionate amount, were given to its solicitor, Mr. Klausmeyer, for delivery to the insured. The typewritten forms or riders for the policies issued by the other insurers were supplied by the German Fire Insurance Company. The premium for the whole insurance was

collected by its solicitor, and was by him paid to the presi-
dent of the company, who remitted to the other companies
their share of the premium, after deducting a broker's com-
mission. At the expiration of each year of the insurance,
renewal policies of the participating companies were ten-
dered to the appellants, through the same solicitor, and were
by them accepted, without a new application. In every in-
stance the collection of the premium was made by the solicitor
mentioned and was distributed in the manner we have de-
scribed.

In November 1905 the insured dwelling became unoccu-
pied, and the German Fire Insurance Company issued a
vacancy permit. The following spring the house was again
tenanted, and remained so until May, 1909, when it once
more became vacant. On this occasion Mr. Goebel reported
the vacancy to Mr. Klausmeyer, and, in pursuance of an
appointment for that purpose, they visited together the office
of the German Fire Insurance Company, and Mr. Klaus-
meyer went alone into the room of the president, and in-
formed him that the property was unoccupied; but in view
of the fact that the building was under the care of an over-
seer, who visited it regularly, the president said that the in-
surance would not be affected, and Mr. Goebel was accord-
ingly advised by the solicitor to that effect. No vacancy per-
mit was suggested, as being necessary, and none was then or
afterwards obtained. The premium paid on the policies was
one dollar per thousand less than would ordinarily have been
charged for an unoccupied dwelling, like the one in question,
but the appellants were not asked to pay a higher premium,
and there is no proof that they knew of such a difference in
the rates. The dwelling continued to be uninhabited until
the time of the fire in July, 1913. When the renewal poli-
cies issued in April of that year were brought to Mr. Goebel
for delivery, he reminded the solicitor that the dwelling was
still unoccupied, and asked whether the policies were all
right. The solicitor assured him that they would be effec-
tive. After the fire proof of loss was presented to the Ger-

man Fire Insurance Company and was by it forwarded to the appellee.

At the time of the interview we have mentioned, in May, 1909, when the vacancy of the dwelling was reported, Mr. Koppleman was president of the German Fire Insurance Company, but during the last three years of the insurance Mr. Lauber held that position. In the course of his testimony Mr. Lauber stated that he could not say whether or not, prior to the issuance of the policy upon which this suit is brought, he knew that the house was unoccupied. It was admitted, however, by Mr. Klausmeyer that he was aware of this fact during the entire period from May, 1909, to July, 1913. Mr. Lauber testified that he acted in his capacity as president of the company in giving instructions to the office force for the preparation of the policy forms and their delivery to the companies with which part of the insurance was placed. The premiums due the participating companies were charged to Mr. Lauber, and the commissions for which they were liable for their portion of the business were retained by him individually. While stating that he acted as a broker in placing four-fifths of the insurance with the other companies, because that was the only capacity in which he could deal with them, and could receive a commission, yet he further said, in effect, that his functions as broker and as president of the company were so interwoven, in reference to such transactions, that they could hardly be distinguished.

Recovery upon the policy now in suit is resisted by the appellee company upon the ground that it had no actual or imputable notice of the vacancy of the dwelling, and that it is, therefore, absolved from any liability, in view of the express warranty in the policy that, during its continuance, the house should be occupied by a family, and the stipulation that the policy should become void if a building therein described, whether intended for occupancy by owner or tenant, should be or become vacant or unoccupied and so remain for ten days. This theory was adopted by the trial Court,

and it accordingly, at the instance of the defendant, granted an instruction withdrawing the case from the jury.

Upon the facts to which we have referred there can be no serious question as to the nature of the relationship between the German Fire Insurance Company and the defendant company with respect to the contract of insurance under consideration. The defendant, of course, must have thoroughly understood that its share of the business was not brought to it by direction of the plaintiffs, but was received solely because of its system of reciprocity with the German Fire Insurance Company. It was through that company alone that the defendant acted during the whole course of the transaction, including the preparation of the policy forms, the delivery of the policies, the collection of the premiums and the receipt of the proof of loss. It is not often that a representation of interest is more complete or more fully recognized. Whatever may have been the theoretical basis upon which the president of the German Fire Insurance Company sustained the character of broker in placing the insurance, the practical relation between the two companies was undoubtedly that of principal and agent in reference to the contract of insurance which is here sought to be enforced.

This being the legal relationship of the companies, the question is whether the defendant company, after issuing its policies and accepting premiums, during several annual periods, for insurance on a building which was in fact all the while vacant, should be held to be unaffected by notice of that condition which may be found to have been received by the company through which it was contracting.

It is a just and settled rule that an insurance company which issues a policy, and collects the premium thereon, with actual or imputed knowledge that warranties contained in it are contrary to the real facts, will not be permitted to defeat recovery by the insured on the ground that the conditions thus stipulated did not exist. *Harford Fire Ins. Co. v. Keating*, 86 Md. 130; *Dulany* v. *Fidelity & Casualty Co.*, 106 Md. 34. It was held in the cases just cited that pro-

visions, like the one in the present policy, that no officer, agent or representative of the company shall have power to waive any stipulation of the policy, except by agreement endorsed thereon, do not apply to the inception of the contract, but are intended to prevent agents from modifying its terms after it has gone into effect. In *American Fire Ins. Co.* v. *Brooks,* 83 Md. 32, the Court had under consideration another provision, also contained in the policy before us, that, in any matter relating to the insurance, no person, unless duly authorized in writing, shall be deemed the agent of the company. Upon the subject of this clause the opinion said: "The purpose of the provision could not have been to take from the insurance company the power to appoint an agent by parol, and thereby in many cases to secure immunity from the consequences of its own acts. If the clause is to be so construed as that, although the company has expressly, or by acts which warrant the implication, appointed an agent, yet it shall not be responsible for the conduct of such agent while acting within the scope of his real or apparent authority, unless such appointment is in writing, then the clause is a mere trap to ensnare the unwary policy-holder and a device by which an insurance company, for its own purposes, may abrogate and repeal the fundamental principle of the law of agency."

In this case the plaintiffs had ample reason to believe that the German Fire Insurance Company was authorized to act and speak for the defendant company in regard to this insurance. As between the policy-holders who depended upon the adequacy of such authority and the defendant company which induced that dependence by the course it pursued in the transaction, it seems altogether reasonable that the latter should bear the loss covered by its policy, if the agency through which it was dealing and to which its interests were so fully committed is in fact chargeable with knowledge at the time of the issuance of the policy as to the vacancy of the dwelling intended to be insured.

In *May* v. *Western Assurance Co.,* 27 Fed. 260, JUSTICE
BREWER had before him a case in which the defendant in-
surance company had issued its policy at the instance of
another company to which application for a larger amount
of insurance had been made and which did not care to con-
tract for the entire risk. The defendant company was held
to be bound by the knowledge possessed by the company
through which it received the business as to the condition of
the insured property, JUSTICE BREWER stating that in his
opinion it would not be fair, from any point of view in the
case, to release the defendant from liability. The same con-
clusion was reached upon a generally similar state of facts
in *Mesterman* v. *Home Mutual Ins. Co.,* 5 Wash. 524.

Upon the question as to whether in this case the German
Fire Insurance Company, which had entire control of the
insurance issued to the plaintiffs, was possessed of knowl-
edge as to the unoccupancy of the insured building at the
time of the issuance of the pending policy, we can have no
difficulty in view of the special facts we have already stated.
The plaintiff, Mr. Goebel, had taken the precaution to visit
the company's office, with its soliciting agent, to inform its
chief executive officer of the unoccupied condition of the
property, and had received from him the assurance, through
the agent, that the policies would not be thereby invalidated.
While the knowledge thus communicated in 1909 may possi-
bly not be sufficient to impute a continuing notice, as to the
unoccupancy of the dwelling, in subsequent policy periods,
yet the recognition of the solicitor Klausmeyer as the proper
medium through which the information could be received and
the assurance given by the company, may be considered as
reflecting upon the nature and extent of the agent's author-
ity. The evidence plainly shows that Klausmeyer was not
acting as an independent broker in negotiating the insurance,
but as a soliciting agent of the German Fire Insurance Com-
pany who had been twenty-eight years in its service. The
business was secured for that company through his solicita-
tion as its representative. It was through him that all of the

policies relating to this insurance were delivered to the plaintiffs and their premium payments were received. When the original policies were expiring it was through this agent that the company, at its own instance, provided renewal policies, and repeated the process thereafter annually for eight years. It renewed the policies on the three last occasions after the building had become and continued to be vacant, and it tendered and delivered the new contracts of insurance without requiring any information as to the condition of the premises except such as it might receive through the agent to whom the entire transaction, as between the company and the plaintiffs, was entrusted. When the agent told Mr. Goebel at the time of the delivery of the policies in 1913 that the vacancy of the house would not affect their validity, he was giving the same assurance that he had been expressly authorized to give by the president of the company at its home office four years previously when Goebel and Klausmeyer called there in reference to that specific subject. Under these circumstances the company is fairly chargeable with the knowledge acquired by its agent as to the unoccupancy of the property it was undertaking to insure, and it must, therefore, be held to have waived that condition of forfeiture.

As this Court said in *Mallette* v. *British Assurance Co.,* 91 Md. 484, quoting from *Alexander* v. *Continental Ins. Co.,* 67 Wis. 427: "The insured deals with no one but the agent. The company cannot deal with its patrons in any other way. Justice and law therefore require that the company shall be held to sanction what the agent agrees to and upon which the insured relies. To allow the company to enforce a condition or forfeiture of the policy for a neglect to do that which the agent informs the assured shall not avoid the policy, would work the greatest injustice."

In 26 *Amer. & Eng. Annotated Cases,* 850, a large number of cases are cited in support of the proposition: "An agent of the insurer whose duty it is to take or solicit applications for insurance, to forward such applications to the insurer for acceptance, to deliver the policy and to collect the

premium, has frequently been held such an agent that knowledge, as to matters affecting the risk or conditions of the policy, acquired by him while performing such duties will be imputed to the insurer."

Special reliance was placed by the defendant's counsel upon the case of *Turnbull* v. *Home Fire Ins. Co.*, 83 Md. 312. In that case knowledge possessed by the broker who negotiated the insurance as to the use of gasoline on the premises was held not to be chargeable to the company issuing the policy. But the broker was found to have sustained no relation of agency to the insurer, and to have been employed by the insured. The case differs, therefore, in that important particular, from the one before us on this record.

In our opinion there is legally sufficient evidence in the case to support the theory of notice and waiver upon which the plaintiffs rely, and hence we are unable to approve of the instructions to the contrary effect which the Court below granted and which form the subject of the only exception reserved at the trial.

> *Judgment reversed, with costs, and new trial awarded.*