DAVID COHEN, plaintiff below, plaintiff in error *vs.* THE HOME INSURANCE COMPANY a corporation of the State of New York, defendant below, defendant in error.

1. INSURANCE—LAW OF STATE WHERE CONTRACT WAS MADE GOVERNS.

Where fire policy contract was made in Maryland, the question of whether insurance agents had authority to waive conditions of policy was governed by the Maryland Law.

2. INSURANCE—AGENTS WITHOUT AUTHORITY TO WAIVE IRON SAFE CLAUSE.

On an equal division of opinion among the Judges, the question whether agents who countersigned and delivered fire policies entered into in Maryland could, according to Maryland law which controlled in the case, after delivery of policies, but before payment of premium, waive future compliance by insured with iron safe clause, the judgment of the Court below, holding that such agents could not so waive will be affirmed.

*(March 8, 1918)*

CURTIS, Chancellor, PENNEWILL, C. J., BOYCE and Conrad, Associate Judges, sitting.

*Robert H. Richards* and *Aaron Finger*, also *T. Allen Golds-borough*, of Maryland, for plaintiff in error.

*Hugh M. Morris* (of Saulsbury, Morris and Rodney) also *W. Calvin Chestnut*, of Maryland, for defendant in error.

Error to Superior Court for New Castle County, No. 3, January term , 1917.

ACTION by David Cohen against the Home Insurance Company, a corporation of New York, for recovery on two fire insurance policies. Judgment for defendant. Plaintiff brings error. Judgment affirmed, the court being equally divided.

*S. c. on demurrer*, 5 *Boyce*, 531, 95 *Atl.* 238; 6 *Boyce*, 6, 95 *Atl.* 912; 7 *Boyce*, 122, 102 *Atl.* 621; 6 *Boyce*, 210, 97 *Atl.* 1018, *on trial*.

Because of the importance of this case, and in view of an equal division of opinion among the judges sitting in the cause, it is thought well to report a summary of the facts and arguments of counsel, with the order affirming the judgment below.

In the latter part of 1913 and the early part of 1914, David Cohen, the plaintiff below, was engaged in a mercantile business in the town of Greensboro, Caroline county, Maryland, where he conducted a general store. In September, 1913, he applied to T. Clayton Horsey, of the firm of Jones & Horsey, local agents for defendant company, for a policy of fire insurance, upon his stock of merchandise. · On September 15, 1913, the said agents delivered to Cohen a policy of fire insurance, in the defendant company, for the sum of $4,000, covering the plaintiff's stock of merchandise, without the premium for the policy being paid by the plaintiff. This policy was of the form known as the Standard fire insurance policy of the state of New York, and attached thereto was what is commonly known as the iron safe clause. About a week after the delivery of this policy, and before the payment of the premium, Cohen brought to Horsey the policy and called attention to the acetylene permit being incorrect because electricity was used. Cohen testified:

"I said, 'Mr. Horsey, what is this iron safe business here?' and he said, 'The company won't expect you to comply with any of the provisions in this iron safe clause, and you needn't pay any attention to it.' "

Horsey testified:

"Mr. Cohen asked me about the iron safe clause, and I told him he needn't pay any attention to it, that in my opinion it was put there for crooks."

Horsey sent the policy to the office in Baltimore, and asked that an electrical permit be placed on the policy and return same to him. Subsequently, Cohen received the policy and paid the premium thereon. The conversation between Cohen and Horsey in respect to the iron safe clause was never brought to the attention of any officer of the company.

Some time after the date of this conversation and about the latter part of October, Cohen applied to Horsey for additional insurance and the latter suggested to Cohen that he take an inventory of his stock, which he did, commencing the latter part of October and finishing November 3d. When it was completed, the plaintiff took it to Horsey, who footed up the totals of the valuations of the several articles on an adding machine in the bank, of which he was the cashier. This inventory, as prepared by Cohen and his clerks and added up by Horsey, showed a value of total stock in excess of $9,000, and thereupon Horsey recommended, and the defendant company issued, another policy of $4,000 on the same stock of merchandise, containing the iron safe clause, and covering the period from November 1, 1913, to November 1, 1914.

On January 6, 1914, a fire occurred at Cohen's store which resulted in Cohen's stock of merchandise being entirely consumed and destroyed. Proofs of loss were subsequently submitted to and filed with the insurance company, showing that the value of the stock destroyed by the fire exceeded the total amount of the two policies. The insurance company refused to pay the loss upon the ground that Cohen had failed to comply with the iron safe clause. Cohen brought this action to recover the amount claimed to be due upon the two policies, being the sum of $8,000.00, with interest.

The declaration, as amended, contains nine counts, but only the eighth and ninth counts were relied on.

The eighth count is upon the first policy, and alleges a general performance of the terms and conditions of the policy "excepting, however, that the said plaintiff did not comply with the requirements of that portion of said policy known as the iron safe clause, but as to said requirements of said policy the said plaintiff alleges that the defendant instructed the plaintiff that he, the plaintiff, need not comply with said portion of said policy known as the iron safe clause, as aforesaid.   *   *   *"

The ninth count is the same as the eighth, except that it is upon the second policy.

In addition to pleading the general issue, the defendant below pleaded specially the failure of the plaintiff below to comply with the provisions of the iron safe clause, upon which pleas issue was joined.

The iron safe clause in the policies appears in the report of the case below.   *6 Boyce*, 201, 97 *Atl.* 1014.

At the trial below, evidence of the above conversation between Cohen and Horsey, was introduced by which it was contended that compliance with the provisions of the iron safe clause was waived by the insurance company, or as a result of which the insurance company was estopped from relying upon a failure to comply with said clause as a defense to the action on the policies.

The defendant below contended that the agent had no authority to make the alleged waiver, and that the same was not binding upon it, relying particularly upon the following language of the policies:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

At the conclusion of the testimony in the trial below, coun-

sel for the defendant requested that the jury be instructed to find a verdict for the defendant, and the jury was so instructed.

The only error assigned was that the court below erred in granting the prayer of the defendant below for binding instructions and in charging the jury to find a verdict in favor of the defendant below.

Jones and Horsey were the general agents of the defendant company within the classification known as "writing agents" or "countersigning agents." *Hartford Fire Ins. Co. v Keating*, 86 *Md.* 130, 38 *Atl.* 30, 63 *Am. St. Rep.* 499. Horsey would receive applications for insurance, bind the risks, and to save himself much clerical work would send the data to the Baltimore office where the policies would be made out and returned to him. He would then countersign the policies in behalf of the company, deliver the same to the insured and collect the premiums. Such was the practice followed in this and other cases with the knowledge and consent of the company.

The policies sued on being contracts made in the state of Maryland, it was admitted and agreed by the parties that the law of that state must control if applicable to the facts. But if the Maryland law is not applicable to the facts of the case, then it must be decided under general law as gathered from decisions of the courts in other states.

Assuming that the law of Maryland does not apply to the present case, the plaintiff in error contended:

First. That general agents, such as Jones and Horsey were, had authority to waive the iron safe clause of the policies at any time before loss, as fully as the company would have had. *Ins. Co. v. Allen*, 119 *Ala.* 436, 24 *South.* 399, 403; *Ins. Co. v Smith*, 65 *Fla.* 429, 62 *South.* 595, 47 *L. R. A.* (N. S.) 619; *Ins. Co. v. Shader*, 68 *Neb.* 1, 93 N. *W.* 972, 60 *L. R. A.* 918; *Ins. Co. v. Spiers*, 87 *Ky.* 285, 8 *S. W.* 453; *Ins. Co. v. Buckley*, 83 *Pa.* 293, 296, 24 *Am. Rep.* 172; *Ins. Co. v. Burget*, 65 *Ohio St.* 119, 61 *N. E.* 712, 714, 55 *L. R. A.* 825, 87 *Am. St. Rep.* 596; *Pace v. Ins. Co.*, 173 *Mo. App.* 485, 158 *S. W.* 892, 897; 19 *Cyc.* 777. And in respect to the two cases cited by the court below in holding "that an agent

having the power and authority of the agent Horsey, has not the authority in law, by his act or statement, to waive the conditions of the iron safe clause after the delivery of the policy and before the loss," *viz. Finleyson Bros. v. Glove Ins. Co.*, 16 *Ga. App.* 51, 84 *S. E.* 311, and *N. W. Ins. Co. v. Mize (Tex. Civ. App.)* 34 *S. W.* 670, the first of these cases does not turn upon the question involved in this case, but is based upon a rule which can have no application in this case; and the second was directed by the Court of Civil Appeals of the state of Texas in 1896, but in 1904, the · same court, in the case of *Fire Ass'n of Philadelphia v. Masterson (Tex. Civ. App.)* 83 *S. W.* 49, being an iron safe clause case, held that the agent had the power and authority to waive the iron safe clause after the issuance and delivery of the policy, notwithstanding the nonwaiver clause.

The following are authorities which hold generally that general agents have the power to waive conditions such as the iron safe clause, notwithstanding provisions of the nonwaiver clauses: *Fire Ass'n of Philadelphia v. Masterson, supra; Concordia Fire Ins. Co. v. Johnson*, 4 *Kan. App.* 7, 45 *Pac.* 722 (this case is, in principle, on all fours with the case at bar); *Plunkett v. Ins. Co.* 80 *S. C.* 407, 61 *S. E.* 893; *Laundry Co. v. Ins. Co.*, 151 *Mo.* 90, 52 *S. W.* 238, 74 *Am. St. Rep.* 521; *Ins. Co. v Dowdall*, 159 *Ill.* 179, 42 *N. E.* 606; *Parsons v. Ins. Co.*, 132 *Mo.* 583, 31 *S. W.* 117 (*affirmed in* 132 *Mo.* 583, 34 *S. W.* 476); *Godfrey v. Ins. Co.*, 169 *N. C.* 238, 84 *S. E.* 339; *Gwaltney v. Prov. Life Assur. Soc.* 132 *N. C.* 925, 44 *S. E. 660; Ins. Co. v. Brown*, 123 *Ill.* 356, 15 *N. E.* 166; *Ins. Co. v. Allen*, 69 *Kan.* 729, 77 *Pac.* 529; *Ins. Co. v. Humphrey*, 62 *Ark.* 348, 35 *S. W.* 428, 54 *Am. St. Rep.* 297; *Wilson v. Assur. Co.*, 51 *S. C.* 540, 29 *S. E.* 245, 64 *Am. St. Rep.* 700; *Eagle Fire Co. v. Lewallen*, 56 *Fla.* 246, 47 *South.* 947; *Elliott on Insurance,* § 301; 19 *Cyc.* 777; *1 Joyce on Insurance*, § 439; *Bowers on the Law of Waiver (published in* 1914) §§ 265, 269; *3 Cooley's Brief on the Law of Insurance*, 2479; *Coles v. Ins. Co.*, 41 *W. Va.* 261, 23 *S. E.* 732; *Berry v. American Cent. Ins. Co. of St. Louis*, 132 *N. Y.* 49, 30 *N. E.* 254, 28 *Am. St. Rep.* 548; *Rivara v. Ins. Co.*, 62 *Miss.* 728; *Brennen v. Ins. Co.*, 99 *Mo. App.* 718, 74 *S. W.*

406; *Ins. Co. v. Norwood*, 69 *Fed.* 71, 16 *C. C. A.* 136; *Ins. Co. v. Gray*, 43 *Kan.* 497, 23 *Pac.* 637, 8 *L. R. A.* 70, 19 *Am. St. Rep.* 150; *Carrigan v. Lycoming Fire Ins. Co.*, 53 *Vt.* 419, 38 *Am. Rep.* 687.

2. That the effect of Horsey's admission to the plaintiff was a waiver by the company of the iron safe clause, or an estoppel against the company to assert noncompliance therewith as a defense.

3. The general or countersigning agent having authority as the court below conceded to waive by parol those conditions which the policy makes the subject of agreement to be indorsed thereon, notwithstanding the provision that requires such waivers to be in writing, it logically and necessarily follows that such an agent may waive those conditions, including the iron safe clause, which the policy provides that "no agent, officer or representative of the company shall have power to waive." If it is competent for the agent to waive the provision of the policy against waiver in a particular form, it is just as competent for him to waive the other provision against waiver in any form, because the agent is denied the power in the one case no less effectually than in the other. *Hartford Fire Ins. Co. v. Keating, 86 Md.* 130, 38 *Atl.* 30, 63 *Am. St. Rep.* 499.

4. This is not a case of an attempted waiver of a "future breach of a condition," as the company contends, and therefore the case of *Sowers v. Ins. Co.*, 113 *Iowa*, 551, 85 *N. W.* 763, does not apply. There is a well recognized distinction between the waiver of a "condition" and the waiver of a "forfeiture." What Horsey waived was not a breach, present, past or future, nor a right forfeited, but a present condition of the policy— a condition existing at the time the policy was issued. *Ins. Co. v. Gibson*, 72 *Misc.* 58, 17 *South.* 13; *Reiner v. Ins. Co.*, 74 *Wis.* 98, 42 *N. W.* 210; *Polk v. Assur. Co.*, 114, *Mo. App.* 514, 90 *S. W.* 398; *Ins. Co. v. Norwood*, 69 *Fed.* 71, 16 *C. C. A.* 136; *Mutual, etc., Asso. v. Cleveland Woolen Mills*, 82 *Fed.* 508, 27 *C. C. A.* 212; *Farnum v. Ins. Co.*, 83 *Cal.* 246, 23 *Pac.* 869, 17 *Am. St. Rep.* 233; *Ins. Co. v. Lewallen*, 56 *Fla.* 246, 47 *South.* 949; *Ins. Co. v.*

*McCrea,* 8 *Lea* (76 *Tenn.*) 513, 41 *Am. Rep.* 647; *Burnham v. Ins. Co.,* 63 *Mo. App.* 85; *Andrus v. Md. Casualty Co.,* 91 *Minn.* 358, 98 *N. W.* 200; *Ins. Co. v. Mfg. Co.,* 2 *Kan. App.* 377, 42 *Pac.* 739; *Guarantee & Accident Co. v. R. Co.,* 97 *Miss.* 165, 52 *South.* 787.

5. Independent of Horsey's authority to waive the iron safe clause the plaintiff in error contends that because of his admission the company was estopped from setting up a breach of the iron safe clause as a defense. The doctrine of equitable estoppel is available at law as well as in equity. *Ins. Co. v. Gusdorf,* 43 *Md.* 506.

6. The statments made by the defendant's agent about the iron safe clause at the time Cohen inquired about it in connection with .the first policy were general in character and just as applicable to the second policy.

7. There was a substantial compliance by the plaintiff with the provision of the policies sued on because the iron safe clause had been eliminated by the statements of the agent, and the plaintiff was not required to establish his loss in the manner prescribed by said clause.

8. The cases cited by the defendant company which seem to be against the waiver of conditions by general agents are in those jurisdictions where the standard form of policy is prescribed by statute. There is no such statute in Maryland. And the cases cited by the defendant company that deal specifically with attempted waivers of the iron safe clause have either been overruled in courts that were forced to follow the Northern Assurance Co. Case, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, which the majority of the states have refused to follow, or were cases that involved facts very different from those involved in the present case.

9. If the Maryland law is applicable to and decisive of this case, it is insisted that under the decisions of that state a general and countersigning agent, such as Horsey was, had the power to waive the iron safe clause of the policy at any time before the completion of the contract, and that the contract was not com-

pleted until it was made to conform to the agreement between the insured and the agent of the company and was finally delivered to and accepted by the insured; that the case of *Lycoming Fire Ins. Co. v. Laugley,* 62 *Md.* 196, upon which the company so confidently relies, was decided as early as 1884, and before the adoption of the standard policy; that the later Maryland cases are more favorable to the insured and declare the law to be that a general agent may waive any condition of the policy at the inception of the contract and before it is perfected and accepted by the insured. *Hartford Fire Ins. Co. v. Keating,* 86 *Md.* 130, 38 *Atl.* 30, 63 *Am. St. Rep.* 499; *Mallette v. British Am. Ass'n, 91 Md.* 471, 46 *Atl.* 1005; *Dulany v. Fidelity & Cas. Co.,* 106 *Md.* 17, 66 *Atl.* 614; *Goebel v. German-American Ins. Co.,* 127 *Md.* 419, 96 *Atl.* 627.

The defendant company claimed:

1. That a large majority of the American courts have refused to permit the policy writing agent to waive the iron safe clause whether his attempted waiver was at the inception of the policy and contemporaneous therewith, or prior or subsequent to its issuance. Three of the cases sustaining such position, and referred to by the court below, are: *Finleyson Brothers v. Globe Insurance Co.,* 16 *Ga. App.* 51, 84 *S. E. 311; Northwestern Insurance Co. v. Mize (Tex. Civ. App. )* 34 *S. W.* 670; *Sowers v. Mut. Co.,* 113 *Iowa,* 551, 85 *N. W.* 763.

Other cases cited as directly in point: *Gish v. Insurance Co. of North America,* 16 *Okl.* 59, 87 *Pac.* 869, 13 *L. R. A. (N. S.)* 826; *Murphy v. Royal Insurance Co.,* 52 *La. Ann.* 775, 27 *South.* 143; *Maupin v. Insurance Co.,* 53 *W. Va.* 557, 45 *S. E.* 1003; *Rundell v. Anchor Fire Insurance Co. (Iowa)* 101 *N. W. 517; Germania v. Bromwell,* 62 *Ark.* 43, 34 *S. W.* 83.

Other cases, cited as holding that the knowledge or statement by the local agent, inconsistent with the iron safe clause, were not binding upon the company: *Hartford v. Farris,* 116 *Va.* 880, 83 *S. E.* 379; *Hammond v. Niagara,* 92 *Kan.* 851, 142 *Pac.* 936, *L. R. A.* 1915F, 759; *Insurance Co. v. Knerr,* 72 *Kan.* 389, 83 *Pac.* 611; *King v. Concordia,* 140 *Mich.* 258, 103 *N. W.* 616,

6 *Ann. Cas.* 87; *Roberts v. Sun Insurance Co.*, 13 *Tex. Civ. App.* 64, 35 *S. W.* 955; *Morris v. Imperial*, 106 *Ga.* 461, 32 *S. E.* 595.

2. By the great weight of authority the policy limitation on the power of the agent to verbally waive the conditions of the policy without written indorsement is upheld against the insured as to any attempted waivers by the agent after the policy has been issued, and a majority of the courts which permit a parol waiver by the agent, as to matters relating to the inception of the policy, refuse to permit such an agent to waive conditions of the policy which by its terms are to be performed in the future. The iron safe clause is such a condition. The great weight of authority holds that countersigning agents are not permitted to waive future conditions.

3. The policy restriction on the power of the agent has been generally upheld in cases which involve these features, viz: (a) Where the policy denied the power to the agent; (b) Where the policy was issued to and in the possession of the insured at the time of the alleged waiver and he, therefore, had notice of the restriction on the agent's power; and (c) where the attempted waiver related to a condition to be performed by the insured in the future.

[4] While some courts prohibit parol waivers whether contemporaneous with the issuance of the policy or subsequent thereto, as *Northern Assur. Co. v. Grand View Bldg. Assoc.*, 183 *U. S.* 308, 22 *Sup. Ct.* 133, 46 *L. Ed.* 213, *Penman v. St. Paul F. & M. Ins. Co.*, 216 *U. S.* 311, 30 *Sup. Ct.* 312, 54 *L. Ed.* 493, *Franklin Insurance v. Martin*, 40 *N. J. Law*, 568, 29 *Am. Rep.* 271, *Dimick v. Metropolitan Life*, 69 *N. J. Law*, 384, 59 *Atl.* 291, 62 *L. R. A.* 774, and *Thomas v. Commerical Union*, 162 *Mass.* 29, 37 *N. E.* 672, 44 *Am. St. Rep.* 323, and while a majority of state courts have permitted parol waivers when existing facts inconsistent with policy conditions were known to the policy writing agent at the time of the issuance of the policy, which is the law in Maryland, Delaware, and New York, still by the overwhelming weight of authority the policy restriction against the authority of the countersigning agent is conclusive as regards the effect of his knowledge, declarations and acts after the policy is issued, un-

less the assured can show an actual authority of broader extent. *Richards on Ins. (3d. Ed.)* § 176. And as illustrating this proposition: *Lippman v. Ætna Ins. Co.,* 120 *Ga.* 247, 47 *S. E.* 593; *Ermentrout v. Girard,* 63 *Minn.* 305, 65 *N. W.* 635, 30 *L. R. A.* 346, 56 *Am. St. Rep.* 481; *Quinlan v. Prov. Wash. Ins. Co.,* 133 *N. Y.* 356, 31 *N. E.* 31, 28 *Am. St. Rep.* 645; *O'Brien v. Prescott Ins. Co.,* 134 *N. Y.* 28, 31 *N. E.* 265; *Moore v. Hanover Ins. Co.,* 141 *N. Y.* 219, 36 *N. E.* 191.

The use of the standard policy was adopted to protect insurance companies from the perils of alleged waivers by their local agents. *Travellers v. Myers,* 62 *Ohio St.* 529, 57 *N. E.* 458, 49 *L. R. A.* 760; *Oshkosh v. Manchester,* 92 *Wis.* 510, 66 *N. W.* 525; *German Insurance Co. v. Heiduk,* 30 *Neb.* 288, 46 *N. W.* 481, 27 *Am. St. Rep.* 402; *Straker v. Phenix Ins. Co.,* 101 *Wis.* 413, 77 *N. W.* 752; *Parker v. Rochester-German Ins. Co.,* 162 *Mass.* 479, 39 *N. E.* 179; *Egan v. Westchester,* 28 *Or.* 289, 42 *Pac.* 611.

The following text authorities point out the distinction in the cases: *Vance on Ins.* 324; 1 *Joyce on Ins.* §§ 433-9; *Ostander on Fire Ins.* 94, 134; 2 *Wood on Fire Ins.* 863, § 417.

[5]   To estop one person by the action of another as agent, it must be shown that the agent was acting within the scope of his authority, either real or apparent, and the party complaining cannot successfully rely on the agent's acts or statements where he has notice of the limited power. *Big. on Estop. (6th. Ed.)* 618, 619; *Vance on Ins.* 343-345; *Globe Mut. Life Ins. Co. v. Wolff,* 95 *U. S.* 326, 24 *L. Ed.* 387.

It was not shown that the defendant company had permitted Horsey to exercise the power of modification of contracts after their issuance, or had ratified his actions in doing so from time to time.

[6]   The payment of the premium to Horsey could not give him a power to waive, expressly denied him in the policies, nor estop the company which had no knowledge of his attempted waiver until after the fire. Under the Maryland cases there is no waiver or estoppel against the company by reason of the payment of the premium to the agent and the retention thereof by

the company. *Busby v. North America Life Ins. Co.*, 40 *Md.* 572, 17 *Am. Rep.* 634; *Reynolds v. Insurance Co.* 34 *Md.* 280, 6 *Am. Rep.* 337; *Turnbull v. Home Fire Ins. Co.*, 83 *Md.* 312, 34 *Atl.* 875; *Crook v. New York Life Ins. Co.*, 112 *Md.* 268, 75 *Atl.* 388. And there is nothing in the Delaware law inconsistent with this Maryland rule.

[7] Replying·to the contention of the plaintiff in error that the policy was not perfectly issued until at or subsequent to the time of the conversation between Cohen and Horsey, it is only necessary to refer to the case of *Reynolds v. German-American Ins. Co.*, 107 *Md.* 110, 68 *Atl.* 262, 15 *L. R. A.* (*N. S.*) 345, *wherein a* similar contention was made and rejected.

[8] At the time of such conversation the issuance of the second policy was not even in the contemplation of the parties. There can be no authority for the proposition that an oral conversation such as this can be relied on by the insured as modifying the written provisions of a policy not then in contemplation and subsequently issued.

[9] If the court finds that the Maryland law is well settled in favor of upholding the validity of the policy limitation, under the circumstances of this case, then resort to authorities outside of that state is unnecessary. The three recent Maryland cases that have dealt with and enforced the iron safe clause against the insured where he has failed to duly comply with it are: *Reynolds v. German-American Insurance Co.*, 107 *Md.* 110, 68 *Atl.* 262, 15 *L. R. A.* (*N. S.*) 345; *Joffe v. Niagara Fire Insurance Co.*, 116 *Md.* 155, 81 *Atl.* 281, 51 *L. R. A.* (*N. S.*) 1047, *Ann. Cas.* 1913*C*, 1217; *Miller v. Home Insurance Co.* 127 *Md.* 140, 96 *Atl.* 267, *Ann. Cas.* 1918E, 384.

It was conceded that the Maryland cases of *Hartford Fire Ins. Co. v. Keating*, 86 *Md.* 130, 38 *Atl.* 29, 63 *Am. St. Rep.* 499; *Mallette v. British-Amer. Ass'n*, 91 *Md.* 471, 46 *Atl.* 1005, *and Dulany v. Fidelity Casualty Co.*, 106 *Md.* 34, 66 *Atl.* 614, are authorities for the proposition that if the countersigning agent issues the policy with knowledge of a then present existence of facts which constitute a variation of any of the conditions, the company will

be estopped from insisting on a forfeiture based on such facts, but it was contended the court below correctly announced the Maryland decisions to go only to the extent of permitting a waiver by the local agent "with respect to conditions existing prior to or at the time the policy is delivered by the agent and accepted by the insured."

It is manifest from the Maryland cases that the verbal conversation between the plaintiff and Horsey, occurring after the issuance of the first policy, and relating also to something to be performed in the future by the insured, did not operate as a waiver of the policy condition binding on the insured.

The great weight of authority in other jurisdictions supports the Maryland rule which upholds the policy restrictions on the agent's authority after the issuance of the policy. Close examination of the Goebel Case, relied on by the plaintiff, shows that the Maryland Court of Appeals has not departed from but adhered to and reaffirmed its position with regard to the authority of the agent under the standard fire policy.

After considering the arguments made by counsel, the court requested a reargument on the following points:

1. "Whether under the Maryland law a condition in an insurance policy may be waived by parol by a general agent at any time before the policy is accepted by the insured, and the contract is complete."

2. "Whether the policy in the present case was accepted before the alleged waiver was made."

3. "Whether there is any sound distinction between the parol waiver by a general agent of a condition that is required to be in writing to be indorsed on the policy and the waiver of a condition that the policy states cannot be waived by an agent at all."

4. "Whether under the Maryland law a parol waiver may be made by a general agent, before the policy is accepted by the insured, of a condition that is to be performed in the future."

Nothing was developed in the reargument that was new, or that was materially different from the arguments made in the briefs first filed. Certain points stated in the briefs were emphasized and a few of the authorities referred to were called to the attention of the court as being applicable to, and decisive of, one or more of the four points mentioned, and notably for the plaintiff

in error the cases of *Goebel v. German-American Ins. Co.*, 127 *Md.* 419, 96 *Atl.* 627, *Ins. Co. v. Gusdorf*, 43 *Md.* 506; for the defendant in error, the cases of *Lycoming Fire Ins. Co. v. Langley*, 62 *Md.* 196, *and Reynolds v. German-American Ins. Co.*, 107 *Md.* 110, 68 *Atl.* 262, 15 *L. R. A.* (*N. S.*) 345.

After a careful consideration of all the arguments made by counsel, as well as an independent examination of the law, the judges stood equally divided respecting the legal right of the plaintiff to recover based upon the evidence produced at the trial; and the judgment of the court below was affirmed without opinion.

[1, 2] The court were unanimously of the opinion that the Maryland law was applicable to the facts, and therefore decisive of the law of the case. But two of the judges, basing 'their judgments largely on the Maryland case of *Lycoming Fire Ins. v. Langley*, held that the agent Horsey had no authority to waive the iron safe clause of the policy after the same was delivered to the insured, and were of the opinion that the plaintiff could not recover. The other judges, believing that the hard rule declared in the Lycoming Case had been so modified in the later Maryland case of *Hartford Fire Ins. Co. v. Keating*, and other cases, including *Goebel v. Ins. Co.*, that the agent of the company had authority to waive the iron safe clause at any time before the contract was completed and accepted by the insured, and also believing that the contract had not been accepted or completed at the time of the alleged waiver, were of the opinion that plaintiff had a right to recover under the law and that the case should have been submitted to the jury for their determination on the facts.

Omitting the caption and signatures of the judges, it was adjudged and ordered by the court, as follows:

And now, to wit, this eighth day of March, A. D. 1918, the above cause having been duly heard in this court by CHARLES M. CURTIS, Chancellor, JAMES PENNEWILL, Chief Justice, and WILLIAM H. BOYCE and HENRY C. CONRAD, Associate Judges, and there being an equal division of opinion among the judges who heard the cause respecting the matters assigned in this court as error in the court below.

It is therefore adjudged and ordered that the judgment of the Superior Court of the  state of Delaware, in and for New Castle county, for the Home Insurance Company, the defendant below and defendant in error, be and it is hereby affirmed; and that the costs of said cause in this court, hereby taxed at the sum of—— dollars—— cents ($——), be paid by the plaintiff in error, the plaintiff below, within thirty days; or attachment.

And, further, that a duly certified copy of this order be transmitted by the clerk of this court to said Superior Court.